IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LAREÑOS EN DEFENSA DEL PATRIMONIO
HISTORICO, INC., et al.,

Plaintiffs,

v.

MUNICIPALITY OF LARES,  et al.,

Defendants.

CIVIL NO. 11-1880 (FAB/CVR)

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

Plaintiffs, individually and as members of a non-profit corporation created to promote historic and cultural traditions of the municipality of Lares, filed a Complaint for declaratory and injunctive relief against defendants for alleged violation of their constitutional and civil rights under the First, Fifth and Fourteenth Amendment of the United States Constitution.  Title 42, United States Code, Section 1983.[1]  Plaintiffs claim they were denied permission to use the town square for a cultural act and later on were also denied the use of a float as part of the yearly parade of the municipality of Lares as a restraint to their freedom of speech and expression.  Plaintiffs filed their claims against defendants Roberto Pagán Centeno, in his personal and official capacity, as the mayor of Lares and against the Municipality of Lares.  (Docket No. 1).

Defendant Roberto Pagán Centeno, Mayor of Lares, in his personal capacity, (hereafter "Pagán Centeno"), filed a Motion to Dismiss Pursuant to Federal Rule of Civil

---

[1]  Yamil Guzmán González, Alma Irizarry Toledo, Edwin Vera Muñoz, Gabriela Vargas Quiñones, María M. Irizarry, Diego Torres Delgado, Margaret G. Rego, José Ruiz Santiago, and Lillian Pérez Toledo appear as individual plaintiffs, together with the non-profit corporation Lareños en Defense del Patrimonio Histórico, Inc.

Procedure 12 (b)(6). Defendant Pagán Centeno submits dismissal of plaintiffs' claims as to him in his personal capacity is appropriate for, apart from threadbare recitals of the elements of their causes of action, plaintiffs' claims are merely conclusory statements, without the specific facts necessary to sustain any claim against said defendant. As such, co-defendant Pagán Centeno alleges the bare factual allegations in the Complaint do not justify the remedy requested under federal law for no facial plausibility to draw the reasonable inference that said defendant is liable for the misconduct alleged can be shown in the pleadings of the Complaint and no constitutional violation ensued. Defendant Pagán Centeno submits dismissal is appropriate under Fed.R.Civ.P. 12(b)(6), as well as for being entitled to immunity. (Docket No. 9).

Plaintiffs submitted their opposition. (Docket No. 22).[2] Thereafter, the Court referred these motions to this Magistrate Judge for report and recommendation. (Docket Nos. 26 and 27).

## MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissal may be warranted for failure to state a claim upon which relief can be granted. To elucidate a motion to dismiss the Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). A complaint must set forth "factual allegations, either direct or inferential,

---

[2] Plaintiffs have requested in the alternative they be allowed to amend the complaint. Under the plausibility examined in the Court of Appeals for the First Circuit's most recent opinion, although geared towards political discrimination under Section 1983 and not a First Amendment Free Speech violation, we shall submit for the Court's consideration that said amendment to the pleadings be allowed, as explained below. Grajales v. Puerto Rico Ports Authority, ___ F.3d ___, 2012 WL 2126116 (1st Cir., June 13, 2012).

regarding each material element necessary to sustain recovery under some actionable theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir. 1996) (*quoting* Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). The Court, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss. Abbott, III v. United States, 144 F.3d 1, 2 (1st Cir. 1998) (*citing* Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

The Supreme Court recent opinion in  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1969 (2007) have changed the standard for a motion to dismiss so that plaintiffs now have to include more information in the pleadings if they want to survive a 12(b)(6) motion.[3]  The First Circuit following on the Supreme Court former decision cited to same and noted this new standard in Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), which relevant part is copied below:

> At the outset, we note that even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007). In so doing, the Court disavowed the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See* Twombly, 127 S. Ct. at 1969. The Court found that the "no set of facts" language, if taken literally, would impermissibly allow for the pleading of "a wholly conclusory statement of [a] claim," and that "after puzzling the profession [**8]  for 50  [*96] years, this famous observation has earned its retirement." *Id.* at 1968, 1969.

---

[3]   No heightened fact pleading of specifics is required but only enough facts to state a claim to relief that is plausible on its face.  Bell Atlantic, 127 S.Ct. at 1974.

Lareños en Defense del Patrimonio Histórico, Inc., et al., v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB/CVR)
Report and Recommendation
Page No. 4

Similarly under Fed.R.Civ.P. 12(b)(6) dismissal for failure to state a claim, the factual statements of the complaint are to be considered true, indulging every reasonable inference helpful to plaintiffs' cause.  However, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions and mere recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *See* Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

In addition, most recently the Court of Appeals for the First Circuit examined dismissal under Twombly[4] and Iqbal,[5] allowing for survival of dismissed political discrimination claims, requiring a careful examination of the pleadings, and therein noticed the pleading standard sufficient under a plausible claim examination.  *See* Ocasio-Fernández v. Fortuño-Burset, 640 F.3d 1 (1st Cir. 2011); *see also* Peñalbert v. Fortuño-Burset, 631 F.3d 552 (1st Cir. 2011).

Notwithstanding above, the Court of Appeals for the First Circuit, upon a determination on a request for dismissal of civil rights claim, provided in Grajales v. Puerto Rico Ports Authority, ___ F.3d ___, 2012 WL 2126116 (June 13, 2012) a plausibility criteria *vis a vis* a request for dismissal wherein allegations of a complaint are to be assessed in light

---

[4]  In Twombly the Supreme Court affirmed the dismissal of an anti-trust class action suit filed under Section 1 of the Sherman Act.

[5]  Iqbal involved a Section 1983 filed by a detainee who had been held in a detention center in the wake of the September 11, 2011, terrorist attacks and submitted the detention was based from unconstitutional racial, ethnic and religious discrimination.

of judicial experience and common sense even when the complaint contains only a conclusory averment of knowledge, which could be inferred from other allegations. Consonant with this clarification, the following examination follows.

## LEGAL ANALYSIS

Defendant Pagán Centeno argues plaintiffs' claims fail to meet a *prima facie* case for the allegations of the Complaint are insufficient to sustain a causal relationship between the appearing defendant's alleged conduct and plaintiffs' Section 1983 civil rights claim that they were discriminated for exercising their First Amendment right of free association, due process or equal protection. Defendant Pagán Centeno also avers that, even if the allegations are considered sufficient, he is immune from suit and entitled to qualified immunity.

Defendant Pagán Centeno submits the only reference in the Complaint as to him appears at ¶31 wherein plaintiffs state that, upon information and belief, they were denied the use of the square pursuant to the instructions of the Mayor and at ¶50 indicating the acts of municipal police agents of Lares were undertaken under color of authority and pursuant to the instruction of the Mayor Pagán Centeno.  Similarly at ¶57, the Complaint states that, upon information and belief, the actions by police agents on November 28, 2010, impeding access of plaintiffs to the parade and restricting their liberty were undertaken upon express or tacit instructions of the Mayor of Lares and/or on his behalf as part of the intent of the Mayor to violate their civil and constitutional rights. (Docket No. 9 ¶¶15-17).

Plaintiffs' opposition to dismissal reiterates their right under the First Amendment to peacefully express themselves freely in a public place, the town square, which is traditionally used for public expression. These rights were repressed, denied and/or abridged on two separate occasions under unreasonable premises. Defendant Pagán Centeno, as the elected mayor of the municipality and town of Lares, in Puerto Rico, is the chief executive officer and in charge of managing the affairs of the township, including the top officer of their municipal police force.

As background information plaintiffs submit that, while being in office from 2009 through December 31, 2012, Pagán Centeno promoted the adoption of a new motto in public vehicles and signs for the town to be referred to as "Lares Ciudad de los Cielos Abiertos" (Lares, the City of Open Skies). A group of residents of Lares and persons born and/or raised therein, including herein plaintiffs, expressed their opposition to the Mayor's actions, for the town of Lares has been known for a prolonged time period as the "Ciudad del Grito", [the Cry of Lares] in reference to a part of its history and culture as being the cradle of the first major [sic] although short-lived revolt against the Spanish rule that initiated a call for independence in Puerto Rico which was planned by Ramón Emeterio Betances and Segundo Ruiz Belvis with a still annual celebrated event that began on September 23, 1868, and has become known every 23rd of September as celebration for "The Cry of Lares." Plaintiffs individually and as a group through the non-profit corporation, plaintiff Lareños en Defensa del Patrimonio Historico, Inc., have protested and expressed their views to oppose the Mayor to what they perceive is an attempt to

eliminate the known motto of "Ciudad del Grito".  The Complaint further claims plaintiffs organized a march[6] to express their opposition to be held on September 12, 2010, and wanted to carry out a cultural act at the center of the plaza of the township known as "Plaza de la Revolución", which is public property owned and managed by the municipality of Lares.  For decades said square has been used as a place of public expression for all sorts of political, social, religious and cultural activities and is a traditional place of public expression.  Plaintiffs requested permission from the municipality of Lares for the use of the public square for said date which was denied under the alleged reason that another group had already requested permission for the use of the square which was false for in fact no other group held an activity at the square for the date requested by plaintiffs.  According to plaintiffs' pleading in the Complaint, upon information and belief the permit was denied to use the square upon instructions of the Mayor, defendant Pagán Centeno.

Plaintiffs further aver that, as part of the traditionally yearly patron saint festivities held in all the towns in Puerto Rico, and in the municipality of Lares in particular, a parade of carriages or floats is carried out prepared by citizens, as well as people from nearby towns, which in the year 2010 was to be held in November 28, 2010.  Plaintiffs decided to participate with a float to support the motto of "Ciudad del Grito" (the Cry of Lares).  Upon notice by defendants of the purpose of plaintiffs' participation in reference to Lares as the "Cry of Lares" permission to parade with their float was denied on the allegation all

---

[6] March is an intransitive verb defining the act  "(a) to walk along a road as part of a group of people protesting about something." MacMillan Dictionary, online 2009-2012.

Lareños en Defense del Patrimonio Histórico, Inc., et al., v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB/CVR)
Report and Recommendation
Page No. 8

carriages and floats had to have decorations and motives of the upcoming Christmas Season, which plaintiffs attempted to comply by placing the traditional poinsettia flowers on their float.  As to both instances where permits were denied, plaintiffs stated the municipality of Lares lacks any rule of regulations nor any such regulation has been adopted or published nor there had been any prior criteria established as to parade participation. During previous years  the parades which were held had no specific requirement imposed on the participants and any person could enter same with ease, even in their motor vehicles, without any particular type of adornment or decoration.  Still, plaintiffs were denied the right to participate in the parade and, when attempted to enter through one of the road intersection, they were surrounded by municipal police agents who barred the entrance of the float into the parade.  Furthermore, the agents restricted not only the liberty of the drivers of the float but also of any participant plaintiffs even to enter the parade on foot. The Complaint states these acts of municipal police agents were taken under color of law or authority and upon information and belief upon orders of their chief or top officer the mayor, herein co-defendant Pagán Centeno.  Additionally, plaintiffs introduced with their opposition a sworn statement of personal knowledge of one of the plaintiffs as to Mayor Pagán Centeno's expression to deny access to their float and permission to plaintiffs because of the controversy caused with their expressions. Plaintiffs also submit their request for interrogatories and production of documents to defendants regarding any regulation or municipal ordinance to support their reasons to deny the authorizations to participate in the use of public spaces to exercise their free speech and right of association

has long expired without any coming into existence to support defendant's contention to deny their requested permits.

Defendant Pagán Centeno did not file any objection to plaintiff's statement being introduced nor the interrogatories and request for admission as part of plaintiffs' opposition to dismissal. Usually a motion to dismiss is limited to the four corners of the Complaint, although a district court may properly convert a defendant's motion to dismiss to one for summary judgment and may consider pleadings and supporting documents in light most favorable to plaintiff, when there is no unfair surprise when the party have had ample opportunity to provide court with any relevant information outside pleadings.[7]

Notwithstanding, without such a conversion and disregarding plaintiffs' sworn statement and additional documents, we need to examine if a conclusion that the pleadings are sufficient to defeat dismissal under Fed.R.Civ.P. 12(b)(6) insofar as the mayor Pagán Centeno in his personal capacity may prevail to defeat dismissal.

## A. Constitutional/Civil Rights - Section 1983.

The basic standards under Iqbal are taken from the Court of Appeals for the First Circuit recent opinion in Air Sunshine, Inc. v. Carl, 663 F.3d 27, 33 (1st Cir. 2011):

> The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " [ *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937] (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[7] Plaintiffs' opposition in this case was filed back on February 13, 2012, and no additional leave was requested by defendant to file a reply up to the date this report and recommendation is issued. Puerto Rican-American Ins. Co. v. Benjamin Shipping Co. Ltd., 829 F.2d 281, 285 (1st Cir. 1987).

inference that the defendant is liable for the misconduct alleged." *Id.* This is not a "probability requirement," but it does require "more than a sheer possibility that a defendant acted unlawfully." *Id.*

All well-pleaded facts are to be taken as true and we draw all reasonable inferences from the complaint in plaintiffs' favor. Field v. Napolitano, 663 F.3d 505, 508 (1st Cir. 2011). Protest street marches such as the ones plaintiffs would have conducted in the town public square according to their pleadings in the Complaint are forms of assembly and expressive speech protected by the First Amendment. *See, e.g.,* Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557, 568, 115 S.Ct. 2338 (1995). The right to free speech embodied in the First Amendment is a fundamental constitutional guarantee, and access to public spaces to speak on matters of public concern has long been a concomitant privilege of the right of expression. The Supreme Court has recognized that use of the streets and other public places has from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens.... [S]treets and parks ... have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. *See* Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954 (1939). A court must examine the nature of the locus, as well as its history, to determine whether it qualifies as a traditional public forum and a public sidewalks along street constituted a traditional public forum. New England Regional Council of Carpenters v. Kinton, 284 F.3d 9 (1st Cir. 2002).

Lareños en Defense del Patrimonio Histórico, Inc., et al., v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB/CVR)
Report and Recommendation
Page No. 11

The actions claimed in the instant case as speech entitled to the protections of the First Amendment, that is the march and the use of a float in a parade, are at times not necessarily considered speech but rather may constitute conduct. As Justice Black, who was never tolerant of limits on speech, emphatically pointed out in his separate opinion in <u>Cox v. Louisiana</u>, 379 U.S. 536, 578, 85 S.Ct. 453, 468 (1965):

> The First and Fourteenth Amendments, I think, take away from government, state and federal, all power to restrict freedom of speech, press, and assembly where people have a right to be for such purposes.... Picketing, though it may be utilized to communicate ideas, is not speech, and therefore is not of itself protected by the First Amendment." (Emphasis in original; citations omitted.)

*See* <u>Clark v. Community for Creative Non-Violence</u>, 468 U.S. 288, 104 S.Ct. 3065 (1984) (referring to use of camping as a way of protest, similar to the occupy movement in areas that is presently being used as a way to protest by citizens at various cities). The Court looked first to the intent of the speaker—whether there was an "intent to convey a particularized message"—and second to the perception of the audience—whether "the likelihood was great that the message would be understood by those who viewed it." *Id.*, at 410–411, 94 S.Ct., at 2730–2731.

Speech which is constitutionally protected against state suppression is not thereby accorded a guaranteed forum on all property owned by the State. <u>Postal Service v. Council of Greenburgh Civic Assns.</u>, 453 U.S. 114, 129, 101 S.Ct. 2676, 2685 (1981); <u>Perry Ed. Assn. v. Perry Local Educators' Assn.</u>, 460 U.S. 37, 44, 103 S.Ct. 948, 954 (1983). The right to use government property for one's private expression depends upon whether the property has by law or tradition been given the status of a public forum, or rather has been reserved for

specific official uses. <u>Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.</u>, 473 U.S. 788, 802–803, 105 S.Ct. 3439, 3449 (1985). If the former, a State's right to limit protected expressive activity is sharply circumscribed: It may impose reasonable, content-neutral time, place, and manner restrictions (a ban on all unattended displays, which did not exist here, might be one such), but it may regulate expressive *content* only if such a restriction is necessary, and narrowly drawn, to serve a compelling state interest. <u>Perry Ed. Assn.</u>, 460 U.S. at 45, 103 S.Ct., at 955; <u>Capitol Square Review and Advisory Bd. v. Pinette</u>, 515 U.S. 753, 115 S.Ct. 2440 (1995).

A review of the pleadings in the instant Complaint makes clear plaintiffs intended to convey a particularized message and expected for their audience to understand their expression consonant with the town well known motto as a root of independent revolutionary history as "Ciudad del Grito".  Still more, when dealing with a public space, in order to preserve the public's free speech rights, under the First Amendment government entities are strictly limited in their ability to regulate private speech in such traditional public fora as public streets and parks and even more on public squares of towns which have been traditionally and culturally associated with the activities of its citizens. Public streets, parks and squares are held in trust for use of public and may be used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. <u>Kunz v. People of State of New York</u>, 340 U.S. 290, 71 S.Ct. 312 (1951); *see also* <u>Pleasant Grove City, Utah v. Summum</u>, 555 U.S. 460, 129 S.Ct. 1125 (2009).

Defendant Pagán Centeno's request for dismissal failed to submit any averment that plaintiffs' permit requests to use the town square to present their position were denied based upon a content-neutral time, place, or manner restriction and in fact provided no reason whatsoever as to the reasons for the denial, reference to any regulation or by-law or any requirement that plaintiffs failed to meet, except indicating the motive of the parade of November 28, 2010, was Christmas.

The First Amendment right is still not without limits for there have been numerous rulings as to reasonable restrictions as to the time, place, and manner of speech in public fora are permissible, which provided that those restrictions "are justified without reference to the content of the regulated speech, ... when they are narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746 (1989) (quoting Clark v. Cmty. for Creative Non–Violence, 468 U.S. 288, 293, 104 S.Ct. 3065 (1984)).  Unlike regulations of speech that are not content-neutral, which are reviewed under a harsher strict-scrutiny standard, content-neutral regulations are reviewed under so-called intermediate scrutiny.  See Sullivan v. City of Augusta, 511 F.3d 16 (1st Cir. 2007).  When in the presence of content-neutral restrictions on speech in a public forum are considered reasonable time, place, and manner regulations if these are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication, content-based restrictions on speech in public forums are strictly scrutinized, and none is permitted by the First Amendment except as necessary to

serve a compelling state interest and only when narrowly drawn to achieve that end and where it is the least restrictive means to achieve that compelling state interest.

However, in the instant case, the municipality of Lares has no public policy nor regulation or known rules are available as to when, how and where public expression, activities, including those which are deemed a protest,  could be exercised and thus what grounds were used to deny permit for the concerned activity may be properly examined. As such, we are not dealing with a facially neutral policy or restriction reasons that could justify denial of free speech or association. *See* William M. Howard, J.D., Ph.D.,*Constitutionality of Restricting Public Speech in Street, Sidewalk, Park, or Other Public Forum—Manner of Restriction*, 71 A.L.R.6th 471 (Originally published in 2012).

Regardless that plaintiffs have pleaded an infringement of their First Amendment right, it would be insufficient to assign such a violation to a particular defendant under Section 1983, and the pleadings of the Complaint are required to also present a link between the infringement and the particular co-defendant charged with such infringement.

A perusal of the Complaint reveals that, insofar as co-defendant Pagán Centeno's participation in the alleged interference with plaintiffs' First Amendment right, there is  a claim and some background information as to the events which plaintiffs submit were in violation of their constitutional rights in that defendant Pagán Centeno "… is the Major [sic] of Lares Puerto Rico, and … he is one of the Defendants in the case at bar in his official and personal capacity."  (Docket No. 1 ¶ III, 11).  "The Major [sic] is the chief executive officer of the township of Lares and as such is in charge of not only managing the affairs of the

township, but also of assuring that the Constitution of the United States and Puerto Rico, the applicable laws of Puerto Rico and the United States, and the ordinances issued by the municipal council are duly enforced." (*Id.*, ¶ IV, 5). Roberto Pagán Centeno is the Mayor of Lares and his term began on January 1, 2009 and it runs until December 31, 2012. (*Id.*, ¶ IV, 11). During the year 2010 , Mr. Roberto Pagán Centeno decided to change the motto of the township to use a new motto, "Lares Ciudad de los Cielos Abiertos" in English "Lares, the City of Open Skies". (*Id.*, ¶ IV, 12). The mayor has promoted the adoption of that motto in public vehicles and signs around the township. (*Id.*, ¶ IV, 13). Plaintiff's position, consonant with a group of residents of Lares to oppose the Mayor's actions, because of their belief the former motto of "Ciudad del Grito" is part of the history and culture of the township and should not be changed was made by the Mayor of Lares for which a group was organized to protest, express their views and oppose the actions of the Mayor. (*Id.*, ¶ IV, 14-18).

The group that is composed by plaintiffs wanted to make use of the town square, which is a traditional place of public expression and asked for a permit to a march scheduled for September 12, 2010, which permit was denied for no valid reason. The alleged reason was that another group had already requested permission to use the square and said reason is considered false for no other group or persons held an activity at the square the day sought for the march. (Docket No. 1, IV, ¶¶ 24-29). Plaintiffs still acknowledge they undertook the march on said date of September 12, 2010, but were not able to use the square. (*Id*, ¶ 30).

<u>Lareños en Defense del Patrimonio Histórico, Inc., et al., v. Municipality of Lares, et al.</u>
Civil No. 11-1880 (FAB/CVR)
Report and Recommendation
Page No. 16

The pleading of the Complaint links the mayor Pagán Centeno with the denial of the permit to use the square on September 12, 2010, in general terms in that "[u]pon information and belief of the Plaintiffs they were denied the use of the square pursuant to instructions of the Major [sic], co-defendant Roberto Pagán Centeno". (*Id.* ¶ 31).

The other instance plaintiffs claim they were denied access to their expression in a public area refers to the float at an activity to be held as a parade of carriages or floats as part of the yearly patron saint activities. (*Id.* ¶ 36). Plaintiffs requested permission to participate in the parade from defendants but once defendants acquired notice of the purpose of the participation with a float with reference to "Lares la Ciudad del Grito", the permission was denied by the defendants because allegedly participants in the parade had to do so with carriages prepared with decorations and motives of the upcoming Christmas season. (*Id.* ¶¶40-41).

The Complaint refers to the municipal police force interfering with them, barring the entrance to the parade and restricting drivers from movement, when attempting to participate without a permit, and finally not allowing them to enter on foot to the area. Insofar as Pagán Centeno, attempts to link co-defendant Pagán Centeno with the denial of the permit, as well as with the acts of restrain above, are referred in the Complaint in that "[u]pon information and belief of the Plaintiff the actions undertaken by the police agents on November 28, 2010 impeding the access of the Plaintiffs into the parade and the actions undertaken to restrict their liberty, were acts undertaken upon the express or tacit instructions of the Major [sic] of Lares and/or under the express instructions of officials of

the Municipality of Lares and/or on their behalf as part of the intent of the Major [sic] of Lares to violate the civil and constitutional rights of the Plaintiffs." (*Id.* ¶57).

Although the Complaint refers in its factual allegation as to Pagán Centeno's participation in these two instances of September 12, 2010 and November 28, 2010, based upon plaintiffs' information and belief insofar that the acts were upon his instructions to the municipal police, there is no similar allegation as to plaintiffs' request for permits in that whoever denied the permits was also acting upon verbal or written instructions of said co-defendant or prior knowledge that Mayor Pagán Centeno was aware of plaintiffs' attempt to participate in the parade with their float.[8]

When raising a Section 1983 claim, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 129 S.Ct. at 1948. "[A] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an 'affirmative link between the behavior of a subordinate and the action or inaction of his supervisor ... such that the supervisor's conduct led inexorably to the constitutional violation.' " Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011) (quoting Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009)). Additionally, "the plaintiff must show that the official had actual or

---

[8]   Officials may be held liable "if the plaintiff can establish that her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization," Rodríguez II, 495 F.3d at 10 (internal quotation marks and citation omitted). Under either a direct or indirect theory of liability, "the plaintiff must show that the official had actual or constructive notice of the constitutional violation." *Id.* (citing Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir.1988) ("An important factor in making the determination of liability is whether the official was put on some kind of notice of the alleged violations, for one cannot make a 'deliberate' or 'conscious' choice to act or not to act unless confronted with a problem that requires the taking of affirmative steps.")).

constructive notice of the constitutional violation." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 768 (1ˢᵗ Cir. 2010), *cert. denied,* __U.S. __, 131 S.Ct. 1016 (2011) (*quoting* Rodríguez-García v. Municipality of Caguas, 495 F.3d 1, 10 (1ˢᵗ Cir. 2007)) (internal quotation marks omitted).

To assert a § 1983 claim against those who may not have had personal involvement in the events, at least from the pleadings of the Complaint as discussed by defendants as to Mayor Pagán Centeno, would result in that said co-defendant not being amenable to suit merely because he is the mayor nor may he be sued under § 1983, as pleaded, on a *respondeat superior* theory that he is liable because he employs the individual defendants or the municipal police agents who interfere with plaintiffs. *See* Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382 (1997); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–95, 98 S.Ct. 2018, (1978).  *See* Marrero-Rodríguez v. Municipality of San Juan, 677 F.3d 497 (1ˢᵗ Cir. 2012) (Section 1983 dismissed as to the mayor and the municipality for there were some regulations in place to govern the situation but even unartful pleading under the Fourteenth Amendment survived as to remaining defendants).

Notwithstanding, in the recent decision of Grajales, __ F.3d __, 2012 WL 2126116, a determination of plausibility is referred as "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense". Iqbal, 556 U.S. at 679.  To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability.  The complaint factual content should be examined to determine whether it permits "the reasonable inference that the defendant

Lareños en Defense del Patrimonio Histórico, Inc., et al., v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB/CVR)
Report and Recommendation
Page No. 19

is liable for the misconduct alleged." *Id.;* Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1ˢᵗ Cir. 2010).

Under the plausibility standard,  the Complaint herein may allow for a cause of action as to co-defendant Pagán Centeno in his personal capacity for it is pleaded that either directly or indirectly by instructions to his municipal police officers he provided tacit authorization for their actions or condoned same.[9]  It is common knowledge that the head of the municipality, the mayor, is the chief officer of the municipal police corps.  It is also common knowledge that a mayor, more so in such small town as Lares, is very much aware of political actions, favorable or in protest, within the premises of their municipality.[10]  One denial of plaintiffs' right to express themselves could be mere negligence or omission; yet twice the charm as indicated in the present case beats casualty and does not fester on premonition.

In the alternative that the Court would consider dismissal for lack of sufficient factual pleading as to co-defendant Pagán Centeno, plaintiffs filed with their opposition to defendant's motion to dismiss a statement that links Pagán Centeno with giving out the instructions that resulted in deprivation of their rights and argued in the alternative plaintiffs to be allowed to amend the Complaint to include said details, which are of the

---

[9]    Twombly plausibility standard for determining whether pleadings are sufficient to state a claim, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible. *See* Arista Records, LLC v. Doe 3, 604 F.3d 110 (2ⁿᵈ Cir. 2010).

[10]    The actual mayor of Lares is a New Progressive Party affiliate.

personal knowledge of at least one of the plaintiffs.[11]  Defendant's lack of opposition to said attachment, still would not convert a motion to dismiss into one for summary judgment without proper notice to the parties for which reason this Magistrate Judge has determined not to convert same for there is still opportunity for plaintiffs to file an amended pleading, if the Court deems insufficient the factual pleadings.

Thus, it is recommended the co-defendant Pagán Centeno's request for dismissal under Fed.R.Civ.P. 12(b)(6) should BE DENIED.  (Docket No. 9).

**B.  Qualified Immunity.**

Defendant Pagán Centeno has also raised as ground for dismissal he is entitled to immunity.  Qualified immunity needs to first address whether the facts alleged by plaintiffs constitute a violation of a constitutional right.  Whether such right is one clearly established is a second prong of qualified immunity once the constitutional right is defined.  *See* Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009).

Defendant Pagán Centeno submitted he is entitled to qualified immunity, even if plaintiffs' constitutional rights were abridged, for  the contours of the right infringed must be sufficiently clear that a reasonable officer would have understood that the challenged action violated such right.  No additional discussion as to the right at issue nor as to the

---

[11] *See* U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220 (1st Cir. 2004) (dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) allowed with prejudice, as a decision on the merits, when plaintiff totally failed to request leave to amend complaint)(abrogated on other grounds recognized in U.S. ex rel. Gagne v. City of Worcester 565 F.3d 40 (1st Cir. 2009) (plaintiff not allowed to amend the complaint for a third time to plead with the required specificity a conspiracy).

alleged gray area of the claimed First Amendment violation follows under the defendant's claim for qualified immunity but solely a general legal pronouncement that public officials are entitled to personal liability immunity from damages caused by their official actions when mistaken judgments are taken and there is no plainly incompetent or a knowing violation of law.  Plaintiffs' opposition is drafted in the allegations of their Complaint clearly state to defendants the nature of the constitutional claims asserted, a First Amendment violation, without discussing any particularity as to defendant's qualified immunity or relevant case law.

Only upon absence of pleadings to establish co-defendant Pagán Cordero's participation in the violation of any identified constitutional violation, qualified immunity would have been proper.   A court does not need to follow the guideline for qualified immunity sequentially. *See* Asociación de Periodistas de Puerto Rico v. Mueller, ___ F.3d ___, 2012 WL 1699915 (1st Cir. 2012) (citing to Maldonado, 568 F.3d at 269-70).  Hence, as to qualified immunity, if all that plaintiffs can allege as to co-defendant Pagán Centeno is what said defendant avers before this Court, the Court of Appeals for the First Circuit indicated in Soto-Torres v. Fraticelli that when the complaint does not even meet the first prong of Iqbal as to a violation of a constitutional right, and the involvement of the defendant has not been established at all except for a general allegation that he was in charge of the event, the allegations are too conclusory to deserve even entitlement to assumption of truth and qualified immunity is allowed.

Notwithstanding, as discussed above, under the plausibility standard of Grajales, plaintiffs have established defendant Pagán Centeno's participation with the infringement of their constitutional rights. As argued for qualified immunity, that is merely the assertion that right infringed must be sufficiently clear, the constitutional violation of plaintiffs' First Amendment right and the allowance of public expression in public property within the town square have long been clearly established.

It is thus recommended that, co-defendant Pagán Centeno's request for qualified immunity at this stage and as submitted on a general allegation be DENIED.

## C. Amended Complaint.

Notwithstanding the above scenario, plaintiffs also requested they be allowed to amend the complaint so as to meet the required standard, if the Court would consider the instant Complaint insufficient. At this early stage of proceedings, regardless of the previous scheduling for amended pleading,[12] this Magistrate Judge considers plaintiffs' cause of action for violation of constitutional rights as to co-defendant Pagán Centeno may be sustained at the initial level of dismissal through an amendment to the Complaint, which may include the information included in the unopposed sworn statement attached to plaintiffs' Opposition to Motion to Dismiss, if the Court would determined the pleadings presently as insufficient.

---

[12]   The Court had issued the order that amended pleadings were to be filed by March 2, 2012. (Docket No. 20, Case Management Order, p. 2). Still, at said time, the Motion to Dismiss was pending opposition for which the Court was not in a position to determine sufficiency of the pleadings. As such, plaintiffs were not aware if amended pleadings were necessary.

Similar as above discussed as to the recent case of Grajales, a determination of plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.[13]  Thus, even upon a concern as to the lack of *respondent superior* liability in the initial pleadings of the Complaint of co-defendant Pagán Centeno, in his personal capacity, it is common knowledge the town mayors are the top officers of their respective municipal police corps.  It is plausible, thus, that the instructions not to allow plaintiffs' participation in public spaces which resulted in alleged infringement of their free speech rights  was well known by the top executive in such a small town as Lares, more so since the events transpired on two (2) separate occasions.  It is likewise plausible, the top executive (the Mayor) held  knowledge of plaintiffs' position and their intention to openly present their statements in opposition to the change of the town motto, as well as the acts of the municipal police to hinder plaintiffs' participation, thus having acquiesce to these acts, upon absence of a policy or regulation regarding public expression in public spaces, permit adjudication or criteria to deny a permit request that could justify the resulting infringement.

Additionally, plaintiffs herein have requested they be allowed to amend the Complaint, which is considered timely in these proceedings.  There would be no prejudice as to that since the case is not so advanced in discovery that would distort the court's management schedule.  Allowance or denial of motions to amend the pleadings are considered on appeal for abuse of discretion. *See* Interstate Litho Corp. v. Brown, 255 F.3d

---

[13] Citing to Iqbal, 556 U.S. at 679.

19, 26 (1ˢᵗ Cir. 2001) (*citing* to Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 250 n.

11 (1ˢᵗ Cir. 1997); Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1ˢᵗ Cir. 1994). Motions

for leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15.

Furthermore, consideration of dismissal of a plausible First Amendment

constitutional violation may result in a miscarriage of justice in enforcing a case

management order that can easily be modified without interrupting the proceedings in the

case. The discovery deadline in the instant case appears to conclude by February of 2013.

Although, as in Grajales, discovery has not resulted in consideration of plaintiffs'

plausibility theory to be further sustained, there is a submission by plaintiffs, unopposed

by defendant, as to the existence of some evidence which potentially if the complaint is

amended may present a factual content of plausibility that could allow a reasonable

inference that defendant Pagán Centeno be liable for the misconduct alleged.

Thus, in the alternative this Magistrate Judge would recommend to the Court to

GRANT plaintiffs leave to amend the Complaint and, as such, still DENY defendant's

Motion to Dismiss, if it considers the present pleadings insufficient.

## CONCLUSION

In view of the foregoing, it is recommended that defendant's Motion to Dismiss in

his personal capacity be DENIED. (Docket No. 9).

IT IS SO RECOMMENDED.

Lareños en Defense del Patrimonio Histórico, Inc., et al., v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB/CVR)
Report and Recommendation
Page No. 25

---

The parties have fourteen (14) days to file any objections to this report and recommendation.  Amended Fed. R. Crim P. 59 (b)(2).  *See also* Amended Local Rules. Failure to file same within the specified time waives the right to appeal this order.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).  *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

IT IS SO ORDERED.

San Juan, Puerto Rico, this 28th day of June of 2012.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE