IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LAREÑOS EN DEFENSA DEL
PATRIMONIO HISTORICO, INC., et al.,

Plaintiffs,

v.

MUNICIPALITY OF LARES, et al.,

Defendants.

CIVIL NO. 11-1880 (FAB)

## REPORT AND RECOMMENDATION

### INTRODUCTION

On September 6, 2011, plaintiffs Lareños en Defensa del Patrimonio Histórico, Inc., a non-profit corporation, and co-plaintiffs Yamil Guzmán-González, Alma Irizarry-Toledo, Edwin Vera-Muñoz, Gabriela Vargas-Quiñones, María M. Irizarry, Diego Torres-Delgado, Margaret G. Rego, José Ruiz-Santiago and Lilliam Pérez-Toledo (hereafter collectively referred as "plaintiffs") filed a federal complaint against defendants the Municipality of Lares and its Mayor Roberto Pagán-Centeno (hereafter "Municipality of Lares" and/or "Mayor Pagán-Centeno"). Plaintiffs filed federal claims against defendant Mayor Pagán-Centeno in his personal and official capacity as the Mayor of Lares and against the Municipality of Lares for alleged violations of their constitutional and civil rights under the First, Fifth and Fourteenth Amendment of the United States Constitution and Section 1983, as well as for supplemental claims under the Constitution and state laws of the

Commonwealth of Puerto Rico.[1]  Plaintiffs' claims are grounded on defendants having denied their request to use the town square (Plaza de la Revolución) for a cultural event on September 12, 2010 and afterwards also denying their participation in a parade with the use of a float as part of the Christmas' parade of the town of Lares as a prior restraint to their freedom of speech and expressions.  Defendants' denial of plaintiffs' requests to express themselves was allegedly based in a dispute as to historical/political reference regarding the event of the September 23rd revolt and Mayor Pagán-Centeno's previous attempt to change the town's motto to suppress any reference to such event which plaintiffs opposed[2] and were attempting to present their own political expressions and manifest their opposition to the actions by the Municipality and by the Mayor.[3]   (Docket No. 1).

Defendants the Municipality of Lares and Mayor Pagán-Centeno, in his official capacity as Mayor of Lares, filed for summary disposition of plaintiffs' claims submitting as grounds there is no *prima facie* case violation as to plaintiffs' freedom of speech or for peaceful assembly.  Defendants claim plaintiffs were able to perform their activity in

---

[1]   The Court dismissed plaintiffs' Fifth Amendment claim for plaintiffs did not include any federal defendants in the Complaint.  The Court also dismissed plaintiffs' Fourteenth Amendment claim for there is no state law wherein the briefly restricted liberty of a civilian raises to a due process procedural or substantive violation.  The Court denied the qualified immunity request of co-defendant Pagán-Centeno which was presented in a Motion to Dismiss. (Docket No. 38, pp.13-15).

[2]   The prior motto contention was the Mayor's use of the slogan "Lares, Ciudad de los Cielos Abiertos" (Lares, the City of Open Skies) instead of "La Ciudad del Grito" (City of Uprising), the latter in reference to Lares' history as to the revolt in 1868 against Spain which is celebrated thereafter every September 23rd.

[3]   In a previous Motion to Dismiss, co-defendant Pagán-Centeno raised the Complaint failed to affirmatively link him in his personal capacity with any alleged violation of plaintiffs' First Amendment rights.  The Court determined at the time that, drawing all reasonable inferences in plaintiffs' favor and accepting their pled facts as true, it was plausible that said defendant had a direct role in denying plaintiffs' right and a reasonable expectation that discovery will reveal evidence of said violation, for which reason it denied qualified immunity requested by Pagán-Centeno prior to discovery. (Docket No. 38, p. 13).

Lareños en Defensa del Patrimonio Historico, Inc., et al. v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB)
Report and Recommendation
Page 3

September 12, 2010, as well as were given an opportunity to participate in a theme parade on November 28, 2010, being offered the last spot at the parade and allowed to drive all around town with their float to display same. Defendants submit that plaintiffs' due process rights under the First Amendment were not violated and summary judgment is requested. In addition, upon dismissal of all federal constitutional claims, there would be no independent jurisdictional basis for plaintiffs' supplemental state claims and these should be also dismissed, without prejudice. Defendants submit there is no specific allegation in the Complaint that defendants acted under color of state law. (Docket No. 64).

Co-defendant Mayor Pagán-Centeno in his personal capacity also filed a Motion for Summary Judgment (Docket No. 67). Co-defendants Mayor Pagán-Centeno, in his official capacity, and the Municipality of Lares joined said motion. (Docket No. 73).[4]

Under this procedural background, it is proper to address in one Report and Recommendation the arguments raised in support of summary disposition by the Municipality of Lares and Mayor Pagán-Centeno, in his official capacity as Mayor of Lares, and Mayor Pagán-Centeno in his personal capacity. (Docket Nos. 64 and 67).[5]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[4] Co-defendants Municipality of Lares and Mayor Pagán-Centeno, in his official capacity, clarify they are not raising issues as to qualified immunity for such doctrine only applies to defendants sued in their personal capacities.

[5] In turn, plaintiffs filed a Motion for Partial Summary Judgment which will be addressed in a separate Report and Recommendation to be issued promptly. (Docket No. 70).

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals

<u>Lareños en Defensa del Patrimonio Historico, Inc., et al. v. Municipality of Lares, et al.</u>
Civil No. 11-1880 (FAB)
Report and Recommendation
Page 5

no genuine issue as to any material fact may the court enter summary judgment." <u>Cadle Co.</u>

<u>v. Hayes</u>, 116 F.3d 957, 960 (1st Cir. 1997).

## UNCONTESTED ISSUES OF FACTS

**A.     Defendants' Uncontested Issues of Facts.**

**1.  Municipality of Lares and Pagán-Centeno in his Official Capacity.**

Co-defendant Municipality of Lares and Mayor Pagán-Centeno, in his official capacity, submit that plaintiffs have failed to bring forward any evidence that defendants were involved in any actions against them that constitute a violation of their First Amendment rights.  (Docket No. 66, p. 2).  The Complaint also lacks any allegation that defendants acted under color of state law and in such fashion deprived plaintiffs of their constitutional rights.  (Docket No. 65, Municipality's Uncontested ¶1).

Defendants submit plaintiff Lareños en Defensa del Patrimonio Historico, Inc., was created under the laws of Puerto Rico on February 14, 2011, that is, two months and eighteen days after the alleged facts of September 12, 2010 took place and said corporation did not exist at the time of the alleged events.  As such, said corporation lacks standing to claim damages for rights it lacked at the time of the claimed infringement.  (Docket No. 65, Municipality's Uncontested ¶ 3; Docket No. 65-1, Document #4, pp. 19-20).

Insofar as plaintiffs' request to use the Plaza de la Revolución in September 12, 2010, an employee of the Municipality answered that it was being used that day for another activity for which plaintiffs were offered another site, Plaza de los Patriotas, to carry out the activity, which plaintiffs accepted. (Docket No. 65, Municipality's Uncontested ¶¶ 4-6, 7-11;

Docket No. 65-1, Document #1, Yamil Guzmán-González' depo., p. 47; Document #3, pp. 17-18, Marilia Arce-González' statement[6]). Plaintiffs performed their activity in September 12, 2010 and no one from the township, the Municipality of Lares or the Mayor interfered with their activity.  Plaintiffs' activity was considered very successful for some 1,800 to 2,000 attended that day even though it was the same day known Juan Mari Bras was being buried.  (Docket No. 65-1, Document #1, pp. 49, 50).

As to the parade held on November 28, 2010, plaintiffs were offered the last spot because their float did not keep relation with the designated theme for said year township's parade and was granted permission to drive the float all over town once the parade was over. (Municipality's Uncontested ¶ 13; Docket No. 65-1, Document #3).

Defendant Municipality's memorandum also submits that, regarding the parade of November 28, 2010, plaintiffs were informed the parade had a theme and all floats should keep the same having Christmas' decorations and motto "Christmas According to my City." Plaintiffs wanted instead to make their float a protest as to the motto of "Ciudad de los Cielos Abiertos" (City of Open Skies) to read "Lares Respeta  su Historia" (Lares Respects its History).  (Docket No. 65, Municipality's Uncontested ¶20).  Plaintiffs were informed they could not participate with a float like the one they wanted to make and they responded they would impose over anything told.  (*Id.*, ¶18).  When plaintiffs tried to get the float at the beginning of the parade, municipal officers advised them not to do it for the float did not keep relation with the rest nor had  requested a permit to participate in the parade.  (*Id.*,

---

[6] Hereafter referred as "Arce."

Lareños en Defensa del Patrimonio Historico, Inc., et al. v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB)
Report and Recommendation
Page 7

¶¶ 19-20; Docket No. 65-1, Document #1 , pp. 62, 74).  Plaintiffs drove their float around and people appreciated their work for it was not censored or damaged by the Municipality nor by the Mayor. (Docket No. 65, Municipality's Uncontested ¶14).[7]

Based on the above uncontested facts, defendants Municipality and Mayor Pagán-Centeno, in his official capacity, submit plaintiffs' First Amendment rights were not in any way violated for they had the opportunity to speak freely and peacefully assemble at another town square as well as being allowed to make their march in the town's streets after the parade concluded.  Since there is no absolute right to freedom of speech even when public property is involved, defendants aver plaintiffs have not establish a violation to their First Amendment.

## 2.  Pagán-Centeno in his Personal Capacity.

Defendant Pagán-Centeno, in his personal capacity, also filed a request for summary judgment  (Docket No. 67).  Pagán-Centeno submits as grounds for summary disposition of plaintiffs' claims the following:

### a.  Time Barred.

The relevant contentions raised by defendant Pagán-Centeno as plaintiffs' claim exceeding the limitation period are as follows:

Plaintiffs filed the federal complaint on September 6, 2011.  All acts alleged by plaintiffs carried out by defendants in denying them the use of the Plaza de la Revolución

---

[7] Defendants make no reference to any documentation to sustain this narrative except for some pages of plaintiff Guzmán-González' deposition.  Still, the remaining deposition testimony is also included as defendants' Document #1 and seems to contradict defendant's averments as discussed further in this report.

for the activity of September 12, 2010 and participating in a float parade on November 28, 2010, exceed the one-year limitation period for damages. (Docket No. 68-1, Pagán-Centeno's Uncontested ¶¶ 3, 14-18, 34-35; Exhibit 1, letter of 9-1-2010 of Diego Torres; Exhibit 4, letter of 9-2-2010 by Gabriela Vargas Quiñones, Secretary Lareños en Defense del Patrimonio Histórico; Exhibit 5, Arce's statement).   Defendants also state the appropriate limitation period should start counting on September 2, 2010 when the permit was denied to use the Plaza de la Revolución not when the actual event attempted by plaintiffs was to take place on September 12, 2010.

### b. Standing.

In regard with co-plaintiffs' corporation, to wit, Lareños en Defensa del Patrimonio Histórico, there is no standing to sue for it was incorporated on February of 2011 and did not exist as a corporate entity at the time of the events claimed in the Complaint as a violation of constitutional rights, that is, back on September 12th and/or November 28th , 2010.

Plaintiff Yamil Guzmán-González testified the above corporation was created to promote cultural and social events, to defend and promote the namesake "Ciudad del Grito" for the town of Lares.  (Pagán-Centeno's Uncontested ¶ 47; Docket No. 68-2, Exhibit 2, Dept. State Registry Certificate for Lareños en Defensa del Patrimonio Histórico, Inc., of 2-14-2011 at 9:50 AM).

### c.  No Personal Liability.

Defendant Pagán-Centeno was not involved or had any affirmative role in the denial of plaintiffs' requests to exercise their freedom of speech.  Pagán-Centeno has no quarrel as to anyone's opinion on the use of different slogans or mottos for the town of Lares, the use of the town squares.  (Docket No. 68-1, Pagán-Centeno's Uncontested ¶¶  1-2, 5, 8, 25, 28-29; Exhibit 3, Pagán-Centeno's statement; Exhibit 7, Yamil Guzmán-González' depo., pp. 18-19, 26-27; Exhibit 8, Lillian Pérez-Toledo's depo., p. 35).

Plaintiffs have no evidence implicating Pagán-Centeno in the creation of any policy or action to deter plaintiffs in expressing their opinion. (Docket No. 68-1, Pagán-Centeno's Uncontested ¶¶ 26-27, 30; Exhibits 3).

Pagán-Centeno delegates social activities, use of the town squares, public activities at public spaces, entertainment, to his aides and the Office of Tourism and Culture, as necessary.  These aides were the ones in charge of the activities related to this case, which was held at another town square, Plaza de los Patriotas, and the float parade with the Christmas' holiday motif.  (Docket No. 68-1, Pagán-Centeno's Uncontested ¶¶ 9, 13; Exhibits 9 and 13).

As to the event of September 12, 2010, which plaintiffs allege they were denied use of Plaza de la Revolución because of the content of their protest, no one at the municipality asked the content of their activity.  Rather, Plaza de la Revolución had a prior engagement and plaintiffs were offered and used instead a more modern and accessible square and had, according to their own statements, a very successful activity. (Docket No. 68-1, Pagán-

Centeno's Uncontested ¶¶ 11, 21, 36-38, 52-54, 60-61; Exhibit 3; Exhibits 4 and 5; Exhibit 7, Yamil Guzmán-González' depo., pp. 47, 49, 50-51; Exhibit 8, Lillian Pérez-Toledo's depo., pp. 33, 36, 43, 46; Exhibits 13 and 14).

In relation to the second activity on November 28, 2010, plaintiffs have no evidence involving Pagán-Centeno in trying to curb their freedom of speech. Pagán-Centeno, in his capacity as Mayor, was part of the start that was heading the parade. Before the event, denial of the permit to use plaintiffs' float cannot be linked to Pagán-Centeno. (Docket No. 68-1, Pagán-Centeno's Uncontested ¶¶ 22-24, 27, 29, 31, 39, 40-45; Exhibits 3, 5; Exhibit 11, Brenda Varela's statement; Exhibits 13 and 14).

The concern of the organizers of the float parade was proper function and the purpose was about holiday Christmas' traditions. Pagán-Centeno was not endorsing any particular display nor gave instructions as to plaintiffs' float. Plaintiffs had a successful march and plaintiff Pérez had the opportunity to show the motto all over town.[8] (Docket No. 68-1, Pagan-Centeno's Uncontested ¶¶ 9, 13, 24, 29, 31, 55-56, 62-63; Exhibits 3 and 11; Exhibit 7, pp. 50-51, 57-58; Exhibit 8, pp. 54, 60-61).

### d. Qualified Immunity.

Pagán-Centeno submits, in the alternative, that claims should be dismissed in his personal capacity under the doctrine of qualified immunity. Pagán-Centeno avers there is no evidence he had any role in the alleged denials or attempts thereto as to

---

[8] Non relevant portions of defendant Pagán-Centeno's uncontested issues of fact are omitted, as well as statements subject to interpretation.

plaintiffs' freedom of expression regarding motto or slogans for the town of Lares nor that he ever intervened with the content of plaintiffs' message. Qualified immunity is discussed as a legal defense from plaintiffs' claim for no individual in defendant Pagán-Centeno's shoes would have understood there was a violation of law by following procedure regarding permits and waivers to use public town square or having personnel in charge of organizing a safe parade with a Christmas' holiday theme.

### e. Supplemental Claims.

In the absence of federal causes of action, Pagán-Centeno prays the Court not to exercise jurisdiction as to state pendent claims under the Constitution of Puerto Rico nor Article 1802, torts, for damages.

## B.    Plaintiffs' Uncontested Issues of Facts.

Plaintiffs filed their opposition, memorandum of law and a reply statement of uncontested and contested facts applicable to both of defendants' pending motions for summary judgment. The general uncontested issues of fact raised by plaintiffs applicable mainly to the Municipality and Mayor Pagán-Centeno are summarized as follows:

Plaintiffs and Mayor Pagán-Centeno have background history, as well as knowledge of the parties position and concerns insofar as Mayor Pagán-Centeno 's action to change the motto of the city of Lares as "Ciudad del Grito."  Plaintiffs individually and as a group organized themselves to protest, express their views and oppose the Mayor Pagán-Centeno's actions, as well as to promote debate and influence public opinion. For said purposes, plaintiffs were holding a march on September 12, 2010 at the central square or town square

known as Plaza de la Revolución, public property owned and managed by the Municipality of Lares.  Traditionally that square has been a place of public expressions for all sort of political, social, religious and cultural activities.  Plaintiffs requested a permit to use Plaza de la Revolución for above date to the Municipality, which was denied.  (Docket No. 88, Plaintiffs' Uncontested ¶¶ 28-29; Exhibits 1, Guzman-González' statement; Exhibit 2, Pérez' depo., pp. 47-48; Exhibit 5 to Deft's Uncontested, Arce's statement).

The reason given to deny plaintiffs' permit to use Plaza de la Revolución on September 12, 2010 was allegedly that another group had already requested permission.  (Exhibit 5).  The only persons who used Plaza de Revolución that same date were a group of artisans who regularly set a tent of approximately 40 feet by 20 feet in the side of the square to sell crafts, while the square is approximately 10,800 square feet.  On numerous occasions, while the artisans are selling their art crafts at Plaza de la Revolución, the Municipality has allowed other activities at said square, including religious and musical performances.  The part of the square plaintiffs wanted to use was at the stage or platform located for speakers or performances and is away from the artisans.

The Municipality did not have a set of rules and regulations approved and published regarding the use of public squares and public locations by September 12, 2010.

Regarding the second activity, plaintiffs submit every year the town of Lares commemorates, as other municipalities in Puerto Rico, the patron saint of the town.  The Municipality has sponsored, produced and directed these activities.  One of the activities included as part of the yearly patron saint has been a parade of carriages or floats prepared

by residents of Lares and other towns, as well as participation of people's own cars and buses. As of the date of November 28, 2010, the Municipality had no regulation to determine who, when and how to participate in the parade. Having no interest to participate in the float contest, plaintiffs' request to participate with a carriage to express their support to the town motto of "Ciudad del Grito" was denied. Defendants allege permission was denied for the carriages were to be prepared with decorations and motives of the upcoming Christmas' Season. Yet plaintiffs' attempt to comply by adorning their float with poinsettias, a plant traditionally used in Puerto Rico as Christmas' flower decor, was also refused. The day of the parade other persons participated in vehicles that had nothing to do with the float contest. In previous years, no specific requirements were imposed for the parade or to participants. To compete for prizes the float would register with the Municipality with a theme picked by a committee. Persons or groups wanting to join the parade with a float and not compete could do so without restrictions. Plaintiff Guzmán-González assisted two other groups of persons in preparing floats to participate in the parade that had nothing to do with the Christmas' theme except for poinsettia plants, same as plaintiffs' float. Despite denial to participate, plaintiffs' attempt to join the parade with their prepared float with design in reference to Lares as "Ciudad del Grito" resulted in municipal police agents barring the entrance of the float, restricting the liberty of the driver and other plaintiffs' movement and liberty pursuant to instructions by Mayor Pagán-Centeno to the municipal Police Commissioner, as indicated by Agent Molina to plaintiff Guzmán-González. This was done while detaining plaintiffs' float, obstructing movement

of plaintiffs and the carriage with one of the police vehicles and a motorcycle and making threats if plaintiffs moved their carriage into the road where the parade was going to pass. (Docket No. 88-1, Exhibit 1, Guzmán-González' statement; Exhibit 2, Lillian Pérez' depo.).

Insofar as plaintiffs' opposition to defendant Pagán-Centeno's request for summary judgment, in his personal capacity, they submit the following:

**1. Time Barred.**

Defendants consider the events that transpired on September 12, 2010 for denial of plaintiffs' request to use of Plaza de la Revolución as well as for denial to participate in the float parade in November 28, 2010 to be time barred.  Plaintiffs submit the one-year statute of limitations for their damages claims is one subject of tolling for they submitted a letter by April 8, 2011 to the Mayor of Lares which was answered by his attorney which interrupted the limitation period.  (Docket No. 88, Plaintiffs' Contested ¶63; Exhibits 4 and 5).  Since the damages claimed for the injury dealt with the denial of a permit use for the Plaza de Revolución on September 12, 2010 and plaintiffs' participation in the float parade on November 28, 2010, plaintiffs' federal and state claims were interrupted by the letter of April 8, 2011 for which the Complaint filed in September 6, 2011 is not time-barred.

**2. Standing.**

Plaintiffs object to defendants' arguments Lareños en Defensa del Patrimonio Histórico, Inc. as a corporation lacks standing.  They also state standing is lacking for co-plaintiffs Vera, Vargas, Irizarry, Torres, Rego, Ruiz and Irizarry for it was plaintiff Yamil Guzmán-González who prepared the float to promote the motto "Ciudad del Grito."

However, plaintiffs held several meetings and decision as to the float and the design was discussed and agreed among the plaintiffs while Guzmán-González made the design and designated to direct the participation, for which all plaintiffs were part of the plan.

Insofar as the corporation's lack of standing, plaintiffs agree it was formally organized after the events presented in the Complaint.  Still, plaintiffs submit the First Amendment makes no reference in the way the people can assemble, whether by association, group, committee, partnership, corporation or individually.  (Docket No. 88, Plaintiffs' Uncontested ¶¶ 1-2).  Plaintiffs do not contest the corporation was created at a later date.  (Docket No. 88-3).[9]

### 3.  Pagán-Centeno's Personal Liability.

#### a.  Plaintiffs' opposition.

Defendant Pagán-Centeno, as Mayor of the town of Lares from January 1, 2009 through December 31, 2012, re-elected again in November 6, 2012, is the chief executive officer and in charge of managing its affairs, and assure enforcement of the Constitutions of the United States and Puerto Rico, the applicable laws and ordinances issued by the municipal council.  (Plaintiffs' Uncontested ¶¶ 15).

Plaintiffs also state as disputed and as told to plaintiff Guzmán-González, that Pagán-Centeno gave instructions regarding the floats and who was going to participate or not in the parade of November 28, 2010.   Likewise as to Pagán-Centeno never having

---

[9] Having raised no contention that defeats the submission that Lareños en Defensa del Patrimonio Histórico, Inc. did not exist as a legal entity at the time of the claimed denial of constitutional rights, plaintiffs have not contested defendants' statement and the matter will be subject of discussion within its legal framework.

restricted public expressions or opposition to the town slogan or motto or providing instructions to the municipal police to restrict participation. (Docket No. 88, Plaintiffs' Disputed ¶¶ 24-25; Exhibit 1). Plaintiffs also dispute Pagán-Centeno's denial of having intervened for when Arce, a Municipality employee, denied plaintiffs the permit to participate in the parade she stated to plaintiff Guzmán-González that Pagán-Centeno told her not to allow plaintiffs' participation in the parade because they wanted to create a controversy. Plaintiffs were never told by Arce that after the parade was over they were free to march with their floats. (*Id.*, ¶ 41; Exhibit 1).

Plaintiff Pérez-Toledo was also removed from the parade by a municipal employee, Brenda Varela, after plaintiffs' float was detained and she attempted to walk into it while holding a flag from Lares with the words "Lares respects its history." Varela told plaintiff she could not participate for she was interfering with the parade, the Mayor and/or his family but did not tell plaintiff Pérez-Toledo she could stay on the sidewalk or the side of the road or in the parade after it had started. (Docket No. 88-6).

### b. Pagán-Centeno's Reply.

Defendant Pagán-Centeno submitted a reply to plaintiffs' opposition and itemized contested and uncontested statements. (Docket Nos. 98 and 99).[10] As to relevant issues not duplicative of former uncontested statements, he submits:

---

[10] Defendants' also referred therein to opposition to plaintiffs' motion for partial summary judgment which is to be discussed in a separate report and recommendation for the parties' cross-motions are commingled in part and have incorporated previous responses. (Docket Nos. 98, 99).

Pagán-Centeno denies having intervened with plaintiffs' plans, actions or motives as to the September 2010 march.  He attests to never having asked the content, purpose or motives himself nor having ordered his employees to do so.  (Exhibits 3 and 5).  As to the permit request for the town square, plaintiffs are considered to have released and waived liability upon agreeing to use "Plaza de los Patriotas."  (Exhibits 3 and 4).  Pagán-Centeno denies anyone telling plaintiffs that another group had already requested permission to use "Plaza de la Revolución."  Plaintiffs were then told said town square had a prior engagement and outstanding activity of the Municipality which is held every Sunday where an artisans' market is held at least until 6:00 p.m.  No one told plaintiffs the artisans' activity covered the whole space of the square or that they could not use the square at all and plaintiffs' letter thereafter requested permit for use of Plaza de los Patriotas. (Exhibits 9-12).

Pagán-Centeno denies the Municipality did not have rules and regulations duly approved and published for the use of squares and public locations as of September 12, 2010 or November 28, 2010.  The Municipality did have rules that the person who contacted the Municipality followed.  (Exhibits 1, 4, 5, and 13).[11]  Plaintiffs did not timely request discovery on this issue under Fed.R.Civ.P. 26.  (Docket No. 99, pp. 15-16, 17-18, ¶¶ 34, and 42-43).

Pagán-Centeno considers contested whether: plaintiffs requested permission to participate in the parade of November 28, 2010; were informed about the Christmas'

---

[11]  Exhibit 1, permit letter; Exhibit 4, Pagán-Centeno's statement; Exhibit 5, Arce's statement; Exhibit 13, permit issued 9-12-2010 for "Plaza de los Patriotas."

Lareños en Defensa del Patrimonio Historico, Inc., et al. v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB)
Report and Recommendation
Page 18

holiday theme requirement; and what they told Arce on the issue or as to any affirmative action by defendant Pagán-Centeno regarding their float or expression or content of plaintiffs' message. (*Id.*, pp. 19-24, ¶¶ 46-54). Other items expressed by plaintiffs and attested to in Guzmán-González' statement were considered irrelevant and defendants seek these be stricken for being contested.[12]

Pagán-Centeno avers that any reference by Guzmán-González of being detained by municipal police when attempting to participate in the parade is contested and also irrelevant as to said co-defendant upon total absence of evidence of his active participation in denying plaintiffs' attempt to express their opinion or content of their messages. (*Id.*, pp. 25-26, ¶¶ 60-61).

Finally, defendant Pagán-Centeno's reply submits the tolling that could be allowed because of the letter plaintiffs addressed to him as Mayor did not interrupt the cause of action against him in his personal capacity. Defendant, however, submits inconsistent submissions in regard to tolling because he first disregards any issue of tolling in his official capacity and secondly, recognizes plaintiffs sent the letter but it does not apply to him in his personal capacity. Case law does not allow for such a simplistic argument when dealing

---

[12] Statements of uncontested and uncontested factual issues of opposing party are not to be stricken on being contested in summary judgment. These statements precisely become disputed issues of material facts that would preclude summary adjudication for even a party's own and seemly self-serving statement could be sufficient if more than raising merely the existence of a scintilla of evidence –if these affidavits are made on personal knowledge and set facts that would be admissible in evidence. Cadle Co. v. Hayes, 116 F.3d 957 (1st Cir. 1997) (to the contrary, statements upon information and belief, as opposed to personal knowledge are not entitled to weight in summary judgment). *See* Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000); Nereida-González v. Tirado-Delgado, 990 F.2d 701, 706 (1st Cir. 1993).

with joint tortfeasors.[13]  A joint tortfeasor that is both the one and same individual on two separate capacities should require a more careful argumentation than the generalized one paragraph assertion in defendant's reply as to action being time barred.  (Docket No. 99, pp. 31-32, ¶68).

### 4. Pagán-Centeno's Qualified Immunity.

Insofar as defendant Pagán-Centeno's request for qualified immunity in his personal capacity, plaintiffs present as objection the First Amendment right at issue was one clearly established under the facts presented.  (Docket No. 87, pp. 10-12).

Plaintiffs' oppose defendant Municipality of Lares' attempt to incorporate defendants' statements and in their reply also incorporates Pagán-Centeno re-alleged uncontested and contested statements.  To avoid repetition plaintiffs refer to making reference only to the most relevant parts. (Docket Nos. 90 and 99). This Magistrate Judge, trying to avoid hair splitting as to what plaintiffs may be referring as incorporated or not, will discuss those same portions considered relevant by plaintiffs, with the caveat that items disputed by the parties are not labeled uncontested upon the parties' disagreement with the opposing party's narration and request that these be stricken.

Defendants' Exhibit 1 attached plaintiff Guzmán González' deposition testimony including numerous additional pages to the ones referred by defendants as in support of their contention.  The additional pages contradict, however, the summarized alleged

---

[13] Rodríguez v. Suzuki Motor Corp., 570 F.3d 402, 411-414 (1st Cir. 2009) (the filing of a judicial or extrajudicial claim against a tortfeasor interrupts the prescription period in question as to the rest of the solidary tortfeasors) (citations omitted).

undisputed facts as to all relevant facts turning the issues as disputed and a subjective interpretation as to constitutional First Amendment rights being violated. Exhibit 1, page 47 refers having requested permit, in phone and in writing, from the Mayor to use the town square denominated Plaza de la Revolución to express their opposition to protest the namesake "Ciudad de los Cielos Abiertos" by September 2010 and talking to Arce. Permit was denied for it was occupied by a Festival of the Troubadours. (Docket No. 65, Exhibit 1, p. 47).[14] Plaintiffs were told they could use instead the Plaza de los Patriotas (Patriots' Square) for which in the letter plaintiffs asked to be given in writing the reasons for the denial and then, as an alternative, they would use the other square. (*Id.*, pp. 47-49).

As to the parade and the use of the float, plaintiffs were told they could not use the float for it had nothing to do with the theme of the parade. In the history of the town and the parade there had never been a specific theme and any person could participate for it was just a float competition but that year the rules were changed. Once told about the Christmas' theme requirement, plaintiffs were willing to put some poinsettias in their float but after consultation with the Mayor they were told (by Arce) that no permission to participate was to be granted for the Mayor did not want for all plaintiffs wanted was to create a controversy. (*Id.*, pp. 58-59). It was not usual to request permission to participate with the float for all that was necessary was to fill out a form or to arrive at the meeting point in the morning and they would place the persons who were going to participate in

---

[14] Arce received the letter for the use of the Plaza de los Patriotas dated September 2, 2010, signed by Gabriela T. Vargas, secretary, on behalf of Lareños en Defense del Patrimonio Histórico. The permission was granted on September 8, 2010 through the Tourism and Culture Office. (Docket No. 65-1, Exhibit 1, p. 1).

order.  Still, when plaintiffs tried to participate the day of the parade the municipal Police

was already there and stopped them. (*Id*., pp. 60, 62).

## LEGAL DISCUSSION

**A.      Defendants  Municipality and Mayor Pagán Centeno.**

The Municipality of Lares' and Mayor Pagán-Centeno's motion for summary

judgment raised plaintiffs' claims were filed after expiration of the one-year limitation

period and plaintiff corporation Lareños en Defensa del Patrimonio Histórico, Inc. lacks

standing. Insofar as the First Amendment claim, Municipality of Lares and Pagán Centeno

argue plaintiffs have not established a constitutional violation for there was no improper

restriction to freedom of speech since said right is not absolute and the government need

not permit all forms of speech in its property.

**1.      Time Barred.**

Defendant Pagán-Centeno, as adopted by other co-defendants, raises that plaintiffs'

claims should be considered barred upon having transpired more than a year from the

allegations in the Complaint and the date it was filed.  It is claimed the actual denial of the

use of the Plaza de la Revolución took place on September 2, 2010, for which the filing of

the Complaint by September 6, 2011 should be considered late.

Since Section 1983 does not contain a statute of limitation provision, it borrows the

appropriate state law governing limitations unless contrary to federal law.  Ruiz-Sulsona

v. University of Puerto Rico, 334 F.3d 157 (1st Cir. 2003).[15]  The one-year rule of torts provided by Puerto Rico statutes is the one applicable in this situation. 31 L.P.R.A. § 5298.[16]

Summarily, the events that give ground to plaintiffs' civil rights under Section 1983 and for their state tort claims occurred on September 12, 2010 and November 28, 2010 and even if it may even be adjudicated to have initiated on September 2, 2010, would not yield a different result.  That would be so for even considering that the denial for the use of the town square initiated the limitation period as claimed by defendants, plaintiffs have submitted contested issues to defendant's allegations that their action is time barred.  Plaintiffs have shown they sent a letter to Mayor Pagán-Centeno raising their claims of constitutional violations as to both events and making an extrajudicial claim of monetary compensation.  (Docket No. 88, Plaintiffs' Contested ¶63; Exhibits 4 and 5).

Federal court also borrows Puerto Rico tolling statute.[17]  Rodríguez-García v. Municipality of Caguas, 354 F.3d 91 (1st Cir. 2004).  An extra-judicial claim is sufficient to toll the statute of limitations as to civil rights claims.  The relevant provision holds:

---

[15]  In cases brought pursuant to Section 1983, the forum state's statute of limitations period for personal injury actions is applied, which in Puerto Rico is one year.

[16]  Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 69-70 (1st Cir. 2005) (citing Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005); (Benítez-Pons v. Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998)).

[17]  The following prescribe in one (1) year:
  (1) Actions to recover or retain possession.
  (2) Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in § 5141 of this title, from the time the aggrieved person had knowledge thereof. 31 L.P.R.A. §5298.

Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor.  31 L.P.R.A. § 5303.

Extrajudicial claims must be "precise and specific" in order to have this desired tolling effect. Gual Morales v. Hernández Vega, 604 F.2d 730, 733 (1ˢᵗ Cir. 1979), (citing Jiménez v. District Court, 65 P.R.R. 35, 42 (1945)). A proper extrajudicial claim must seek the same relief ultimately sought in the subsequent lawsuit.  Fernández v. Chardón, 681 F.2d 42 (1ˢᵗ Cir. 1982);  Hernández Del Valle v. Santa Aponte, 575 F.2d 321, 323-24 (1ˢᵗ Cir. 1978).

Considering the above mentioned situation and relevant provisions, it is recommended that defendants' summary request as to plaintiffs' claims being time-barred be DENIED.

## 2.    Standing.

Defendant Pagán-Centeno avers plaintiff Lareños en Defensa del Patrimonio Histórico, Inc., (hereafter "plaintiff corporation") lacks standing since said corporation did not exist at the time of the events alleged in the Complaint.  Plaintiffs' reply agreed being uncontested the civil rights violations claimed took place in September 12, 2010 and November 28, 2010 and that plaintiff corporation was created afterwards on February 2011. A standing issue requires judicial examination of a complaint's allegations to ascertain whether a particular plaintiff is entitled to adjudication of the particular claims asserted. Allen v. Wright, 468 U.S. 737, 104 S.Ct. 3315 (1984); Cotter v. City of Boston, 323 F.3d 160 (1ˢᵗ Cir. 2003).

Section 1983 in its relevant part provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or caused to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...  18 U.S.C.A. §1983.

A corporate entity may have standing to raise claims for violations of its civil rights since it is considered "a person" under Section 1983.  Still, to have standing thereunder it must be able to demonstrate, as any other plaintiff would, that there (1) was an injury in fact (2) which is fairly traceable to the alleged events or proceedings and (3) would be likely redressed by a favorable decision.  As such, a corporation needs to have a personal stake in the outcome of the controversy.  Diva's Inc. v. City of Bangor, 411 F.3d 2005 (1st Cir. 2005) (joining other circuits who have addressed the issue to hold that standing requirement also applies to actions brought to redress injuries to a corporation under Section 1983).  For all purposes and as a general rule, a corporation and its shareholders are distinct juridical persons and are treated as such under the law.  In re Dein Host, Inc., 835 F.2d 402, 405 (1st Cir. 1987).

The Complaint herein alleges that the First Amendment violations occurred on dates of September and November 2010 when defendants' actions are alleged to have resulted in infringement of plaintiffs' First Amendment rights.  It is uncontested that plaintiff corporation did not exist at the time of the alleged violations for which it was not a person until 2011 and it could not have suffered any injury in violation of its rights at the relevant

time of the events in the year 2010.  Plaintiff corporation fails to meet the first requirement that, to invoke federal court jurisdiction, it must be able to show having suffered an injury in fact to its cognizable interest.  Lacking such initial step, plaintiff corporation would not be able to link the remaining requirements, to wit, to show a causal connection between the asserted injury and defendants' actions and finally that such injury may be redressed.

In view of the foregoing, it is recommended to the Court to summarily adjudicate that plaintiff Lareños en Defensa del Patrimonio Histórico, Inc. lacks standing to raise any First Amendment and/or civil rights violation, as well as supplemental state claims.  As such, it is recommended that defendants' summary judgment request to dismiss claims as to the plaintiff corporation be GRANTED.

### 3.  First Amendment Claim.

Defendants posit plaintiffs have not established a violation to their First Amendment rights.  In summary judgment a moving party only needs to aver an absence of evidence to support the non-moving party's case and  plaintiffs have failed to bring forth evidence that defendants were involved in any action against them that constitutes a constitutional violation, that is, a *prima facie* case, for which no trial worthy issue exists.

As to plaintiff corporation Lareños en Defensa del Patrimonio Histórico, Inc., upon above discussion for lack of standing, there is no First Amendment violation to be considered.

Insofar as remaining individual plaintiffs, defendants base their request for summary adjudication of their First Amendment claim in that no one at the Municipality and/or

representing Mayor Pagán-Centeno told plaintiff Guzmán-González that he could not hold

his activity on September 12, 2010 but rather that he could not hold same at "Plaza de la

Revolución" for it was occupied and plaintiffs were instead offered another square to carry

out their activity, which was indeed held. Thus, plaintiffs' activity was not limited or

restricted in any way because they had another public site to carry out their protest and,

even from plaintiffs' testimony, the activity of September 12, 2010 was considered a success.

Regarding the November 28, 2010 parade, defendants argue plaintiff Guzmán-

González was told there was a theme and all the floats should bear relation to said theme,

namely, Christmas' holidays. Even when plaintiffs were told they could not participate in

the parade with the float to protest the motto "Ciudad de los Cielos Abiertos" with their own

slogan "Lares Respeta su Historia" plaintiffs informed Arce they would be participating

whether the Mayor liked it or not. When attempting to enter with the float at the beginning

of the parade, municipal officers advised plaintiffs not to do so for not being in relation with

the rest of the floats' themes and not having requested a permit to participate.

As to both instances related to plaintiffs' request to be allowed to exercise free speech

and/or association under the First Amendment, they follow the general norm that freedom

of speech is the indispensable condition of nearly every other form of freedom, for which

plaintiffs' claims should not be taken lightly. *See* Palko v. Connecticut, 302 U.S. 319 327,

58 S.Ct. 149 (1937). Notwithstanding, constitutionally protected speech is not accorded a

guaranteed forum on all property owned by the government for the right to use such a

property would depend whether the property has by law or tradition been given the status

Lareños en Defensa del Patrimonio Historico, Inc., et al. v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB)
Report and Recommendation
Page 27

of a public forum or has been reserved for specific official use.  *See* Capitol Square Review and Advisory Bd. v. Pinette, 515 .S. 753, 761, 115 S.Ct. 2440, 2446 (1995); Postal Service v. Council of Greenburgh Civic Assns., 453 U.S. 114, 129, 101 S.Ct. 2676, 2685 (1981).   Still, some spaces, such as public streets, sidewalks, parks and town squares, which have immemorially been held in trust for the use of the public, have been used for purpose of assembly, communicating thoughts between citizens, and discussing public questions and are considered public fora for which no particularized inquiry into their precise nature becomes necessary.  Del Gallo v. Paren, 557 F.3d 58, 70 (1st Cir. 2009) (*citing* New England Regional Council of Carpenters v. Kinton, 284 F.3d 9, 20 (1st Cir. 2002)).

Plaintiffs object to defendants' arguments regarding lack of evidence of First Amendment violations and submit facts, among others asserting:

(1) the town square "Plaza de la Revolución", in front of city hall, has been traditionally and for decades a place of public expressions, being public property used for all sorts of activities and views;

(2) defendants' initial denial by telephone of plaintiffs' requested site for their expression/march at "Plaza de la Revolución" was the reason an alternate location at another town square (Plaza de los Patriotas) was made as referred by plaintiffs' in their written permit request;

(2) the reasons provided by defendants to deny plaintiffs use of their selected place of expression at "Plaza de la Revolución" for their activity on September 12, 2010 are disputed for the only other group therein was a group of artisans who occupied only a small

space with their tent and on numerous occasions other activities were held with their presence, except for plaintiffs;

(3) subsequent denial of plaintiffs' request to participate in the November 28, 2010 parade on the basis their float not being in accordance with the town selected Christmas' theme for that year ran afoul of the traditional celebration taking place every year in the town, as in other municipalities, to commemorate the patron saint of the town with parade of carriages or floats;

(4) the same day of the parade other participants not having anything to do with the Christmas' theme also participated with their floats and vehicles;

(5) plaintiffs had previously informed defendants their participation in the parade attempted to raise their protest as to the town motto dispute;

(6) plaintiff Guzmán-González assisted in the preparation of two other floats, also without Christmas' theme compliance, that were allowed to participate;

(7) defendants' allegations that plaintiffs could go around the town streets and could participate in showing their float after the parade was held was not informed to them;

(8) intervention with plaintiffs' float and with individual plaintiffs as pedestrians in the parade was undertaken by municipal police officers upon orders from the Municipal Police Commissioner, as observed and attested to by participating plaintiffs who were detained at the time;

(9) a municipal employee intervened with plaintiff Pérez as a pedestrian to hinder her from participating with her flag and written message on account of interfering with the parade, the mayor and/or his family.

Regardless whether the town of Lares might have been or not subject of several slogans, mottos and/or namesake than the ones presented herein by the opposing parties of "Ciudad de los Cielos Abiertos" *vis a vis* "Ciudad del Grito", there is a political/ideological and/or historical dispute between the appearing parties with First Amendment connotations and which limits the present controversy in this aspect, without relevance as to other mottos.   Likewise, it is not relevant to plaintiffs' First Amendment claim whether the regulations and policies for the permits of the Municipality of Lares were not produced because of discovery disputes between the parties and, as such, not made discoverable to plaintiffs, making their existence and/or their application also a disputed fact.[18] Even content-neutral time, place and manner of restrictions regulations may be applied to hinder freedom of expression and for any party to rely on same as a defense requires these regulations to be subject to effective judicial review, which is not the present situation.

Still, without reliance on the permit process, the undisputed factual contentions are that as to the activity of September 12, 2010 plaintiffs were not denied their right to freedom of expression for they held the activity at another nearby location, a similar public

---

[18]   For all purposes, defendants and plaintiffs having denied said discovery have not placed this Court in a position to consider whether a regulation as to permits exists, whether it is one neutrally applied or if upon examination and application to the facts would be considered reasonably tailored to the government interest. (Docket No. 88, Plaintiffs' Uncontested ¶¶ 34, 42-43; Docket No. 99, Defts' Uncontested ¶¶ 34, 42-43).

square, and even have described the activity as successful with significant attendance of the public.  The right to be allowed freedom of expression in a public site that is reasonable and equally accessible, although not a particularly anticipated site of the speaker, within the same time frame and no impeachment on its component or content, falls on equal footing with the site initially sought.  When the content of the speech was not in any manner interfered by defendants, under the present factual scenario it fails to present fertile grounds to raise a constitutional violation of plaintiffs' First Amendment rights as to September 12, 2010 event.

After all the First Amendment does not require the most effective means of communication, but rather that individual retains ability to communicate effectively.  City of Renton v. Playtime Theaters, Inc., 475 U.S. 41, 106 S.Ct. 925 (1986) nor the Constitution guarantees every speaker the forum of his choice.  Heffron v. Int'l Soc. for Krishna Consciousness, 452 U.S. 640, 647, 101 S.Ct. 2559 (1981); Sullivan v. City of Augusta, 511 F.3d 16, 54-55 (1st Cir. 2007).

Being uncontested that plaintiffs were offered and/or were allowed a reasonable alternate public space to conduct their activity on September 12, 2010, no First Amendment violation to their freedom of expression and/or association ensued as to this event.  As such, it is recommended that defendants's summary judgment request as to the events of September 12, 2010 be GRANTED.

A different situation arises as the total prohibition and/or inability for plaintiffs' participation in the parade of November 28, 2010 within the contested factual situation

described and with the intervention of municipal officers and/or employees.  Plaintiffs claim on said date is also related to use of public space, such as streets and sidewalks, which are also traditionally considered public forums for the use of the public to express their opinions, religious manifestations, protest or support.[19]  The Highest Court has noted, "[f]reedom of expression has particular significance with respect to government because '[i]t is here that the state has a special incentive to repress opposition and often wields a more effective power of suppression.' " First Nat'l Bank, 435 U.S. at 777 n. 11, 98 S.Ct. 1407 (alteration in original) (quoting Thomas Emerson, *Toward a General Theory of the First Amendment* 9 (1966)).

Since there is no possibility of judicial review as to defendants' claimed regulations and if these are consonant with a content-free permit, a government is considered to violate free speech when it excludes a speaker or citizen a from a forum he/she would be entitled to enter.  Similarly, there are genuine issues of material fact in controversy as to the events of November 28, 2010 for which summary disposition should not be available as to First Amendment right regarding these events.

Insofar as Mayor Pagán-Centeno's official capacity, plaintiffs attempt to present as to the event of November 28, 2010 genuine issues of contested facts regarding his participation that were claimed to have hindered plaintiffs' freedom of speech and association as follows:

---

[19]   The effectiveness of a message or protest on November 28, 2010, after the parade took place as presented by defendants, does not run on similar footing as the first instance on September 12, 2010 when plaintiffs were able to carry out their activity without interruption or government intervention for the full time it was scheduled except for a similar public square location.  (Docket No. 65, ¶14).

1- Mayor Pagán-Centeno's participation in the denial of permits to plaintiffs to use public spaces, including the street and sidewalks by municipal employees at the parade of November 28, 2010;

2- his instructions to municipal police's and/or municipal officers' intervention to plaintiffs' participation in the parade as attested by plaintiffs Guzmán-González and Pérez.

When dealing with First Amendment freedom of expression and association, opening viable alternative to public demonstration or free assembly may defeat a First Amendment violation claim for clearly the government and/or municipalities may place reasonable restrictions to the time, manner and place of speech.  However, those restrictions need to be justified without reference to the content of the regulated speech and tailored narrowly to serve a significant government interest.  To preserve public free speech rights under the First Amendment, government entities are strictly limited in their ability to regulate private speech in traditional public fora.[20]  Defendants cannot base such a defense in that the First Amendment right is not absolute or limitless at summary judgment when there are contested issues of material fact, contradictory testimonies between the parties that require credibility determinations or regulations not placed on record nor provided in a timely fashion to opposing parties.  Even security issues is not a talisman the government may invoke to justify burden on speech, but one requiring narrow tailoring.  Black Tea Society v. City of Boston, 378 F.3d 8 (1st Cir. 2004).

---

[20] Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 129 S.Ct. 1125 (2009) (contrary to public monuments that endure, public spaces accommodate only a limited number of persons for a limited time, speakers come to an end and leaflets distribution runs out).

Lareños en Defensa del Patrimonio Historico, Inc., et al. v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB)
Report and Recommendation
Page 33

The record contains disputed information raised by plaintiffs that the parties were previously engaged in legal disputes as to the town motto for Pagán-Centeno is "Ciudad del Grito" or "Ciudad de los Cielos Abiertos"; whether Arce told plaintiff Guzmán-González the Mayor did not allow participation of plaintiffs in the parade because they wanted to create a controversy; municipal police intervening with plaintiffs' float told them receiving orders from the Police Commissioner, the highest ranking officer and who responds directly to Pagán-Centeno and a municipal police who was observed at the time consulting and receiving instructions by telephone in regards with blocking plaintiffs' participation at the parade. In addition, Pagán-Centeno was heading the parade of November 28, 2010 and could observe when plaintiff Pérez was attempting to place herself in the parade but a municipal employee intervened.[21]

As the Court of Appeals for the First Circuit referred as hard to imagine, but potentially raised in the instant federal action, a municipality may seek to control parade permits by excluding only those who in the past had never distributed leaflets while picketing or parading, imposing additional regulations or permit restrictions on those deemed offensive expressions or with protest intent. Such scenario flowed from logically from a decision examined in Ackerley Communications of Massachusetts, Inc. v. City of Somerville, 878 F.2d 513 (1st Cir. 1989); see NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct.

---

[21] As to plaintiffs see: Docket No. 88, Plaintiffs' Uncontested ¶¶ 40-62, 65; Exhibit 1, Guzmán-González' statement; Exhibit 2, Pérez deposition; Exhibit 6, Pérez' statement. As to defendants see: Docket No. 68-8, Exhibit 7, Guzmán-González' deposition; Docket No. 99, Defts' Uncontested ¶¶ 46-47, 58.

328, 338 (1963) ("The threat of sanctions may deter [the] exercise [of First Amendment rights] *520 almost as potently as the actual application of sanctions.").

Having plaintiffs presented a sufficient *prima facie* case as to their freedom of speech and association as to their attempt to participate in their protest of November 28, 2010, as well as there being contested issues of material fact, it is recommended that defendants' request for summary disposition of their First Amendment claim be DENIED insofar as the Municipality and Mayor Pagán-Centeno, in his official capacity, as to the events of November 28, 2010.

**B.     Co-defendant Pagán-Centeno.**

Co-defendant Pagán-Centeno in his personal capacity filed for summary disposition as to plaintiffs' claims on various grounds.

**1.  Personal Liability.**

It is defendant Pagan-Centeno's averment that plaintiffs have no evidence to show any action by him to deter any of the plaintiffs from exercising their freedom of speech and being uncontested that he was not involved or had any affirmative role in the alleged denial, and even if so, was not on account of his personal capacity.

Plaintiffs' evidence as to contested facts insofar as the November 28, 2010 parade refers that Arce, a municipal employee told plaintiff Guzmán-González he would not be granted permission to participate in the parade with the float "because Major Roberto Pagán Centeno had told her not to allow our participation because we wanted to create controversy." (Docket No. 88, Exhibit 1).   Defendants, on the other hand submit as

contested that plaintiffs did not request permission nor informed their efforts to be part of the Christmas' motif of the parade to the Municipality prior to the event. (Docket No. 99, Exhibits 5 and 11).[22] Plaintiffs also submit they were detained by municipal officers when attempting to participate in the float parade, being blocked by police vehicles and not allowed to move and, as pedestrians, were not allowed to state their messages. (Docket No. 88, ¶59, Exhibit 1). Pagán-Centeno's statement refers that in his capacity as Mayor he delegates the preparation of regulations of social activities and certain public events to the Office of Tourism and Culture of the Municipality of Lares, which is in charge to provide permits. Pagán-Centeno did not participate or engage in creating or advising as to any policy or any denial or as to any communication with any of plaintiffs regarding the use or advisement as to the parade. Pagán-Centeno observed plaintiff Pérez at the parade attempting to place herself at the beginning and since he is the Mayor he is the one to lead the parade. He never gave instructions as to the policy regarding the floats, nor directed the activity nor gave instructions as to which message was going to appear or not. He did not instruct the Municipal police to restrict the participation of anyone in the parade, aside from preserving the public safety of the activity. (Docket No. 68-4, Exhibit 3).

---

[22] Arce's statement in reference to the conversation with plaintiff Guzmán-González regarding the parade with a Christmas' theme and since his float had not relation with the Christmas holidays was that he could not participate but when the parade was finished he was free to march with his float as many times as he desired and the Mayor did not intervene in any manner. (Docket No. 68-6, Exhibit 5). Varela's intervention with plaintiff Pérez in that they could make her statement elsewhere on the parade and on the street but not at the beginning of the parade but move to the sidewalk and the Mayor did not intervene in any manner as to the content or way or manner plaintiffs wanted to conduct themselves at the parade. (Docket No. 68-12, Exhibit 11).

Guzmán-González' testimony is to the effect that his calls to the Office of Tourism were addressed instead to Arce, a municipal employee at the Mayor's office at the time the town square permit and from thereon communications on permit matters were with Arce.

To be liable under Section 1983 a government official must have caused the deprivation of a constitutional right. Still, such deprivation may have occurred at his direction or with his consent or by setting in motion a series of events that reasonably would cause others to deprive plaintiff of constitutional rights. The state of mind as to retaliation is typically not one susceptible to proof by direct evidence but may be established by circumstantial evidence. Ferranti v. Morán, 618 F.2d 888, 892 (1st Cir. 1980). Circumstantial evidence may be sufficient in the burden-shifting purposes of a case based on discrimination. Gómez v. Rivera-Rodríguez, 344 F.3d 103, 120 (1st Cir. 2003) (citing Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 2154-55 (2003).

Even after discovery, the matter of personal liability at first glance seems to relate to issues of credibility, intent and motive in that one party negates participation or that municipal employees acted upon his instructions and the opposing party refers to the contrary. Tests for summary judgment remains particularly rigorous when disputed issue turns on questions of motive or intent. Lipsett v. University of Puerto Rico, 864 F.2d 881 (1st Cir. 1988) (citing Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491 (1962). As such, aside from subsequent discussion of qualified immunity

which rests on an objective consideration, the issue of personal liability raised by co-defendant Pagán-Centeno rests on credibility determinations on the basis of circumstantial evidence for which summary disposition would be unavailable.

However, plaintiffs infer Pagán-Centeno's participation from evidence that may not be admissible as hearsay, for which summary adjudication stands on a different footing. According to plaintiffs, Arce averred the mayor stated that plaintiffs would not be allowed to participate for all they wanted was to make a controversy.  Different from the Woodman v. Haemonetics Corp., 51 F.3d 1087 (1st Cir. 1995), where statements of a defendant were not considered hearsay to defeat summary judgment, plaintiffs' evidence is that Guzmán-González heard from a third party, Arce, who denied making such statement, about Pagán-Centeno's alleged comment not to grant permit for all they wanted was to raise a controversy.  Even if the statement at issue is not to be admitted for its truth to defeat the hearsay rule application, it is unreliable for being double hearsay and may not defeat summary judgment on grounds that it shows pretext or intent.  Arce denied making such a statement insofar as Pagán-Centeno.  As such, the basis of circumstantial evidence or inference of intentions to hinder plaintiffs' First Amendment rights attributed to Pagán-Centeno is tenuous at the most.  When the opposition to summary judgment constitutes

inadmissible hearsay, a party is considered to have failed to comply with Rule 56(e).[23]  *See*

FDIC v. Roldan Fonseca, 795 F.2d 1102, 1110 (1st Cir. 1986).[24]

Thus, plaintiffs have not been able to show in their opposition having evidence of

Pagán-Centeno's personal participation as to the infringement of their First Amendment

right.

However, if personal participation is not adopted as above discussed, Pagán-Centeno

would still be entitled to qualified immunity as explained below.

### 2.  Qualified Immunity.

Defendant Pagán-Centeno submits he acted in accordance with rules and regulations

and not in a discriminatory manner and plaintiffs have presented no evidence as to his

direct participation in the events or having any role or intervention with the alleged denial

of plaintiffs' rights.  (Docket No. 68, p. 16).  Pagán-Centeno avers that all that the evidence

has shown is an office in the Municipality of Lares following a procedure as to permits and

waivers regarding the use of town squares and that Pagán-Centeno had personnel in charge

of organizing a safe parade in front of co-plaintiff Pérez.  (*Id.*, p. 17).  The existence of such

procedure or regulation is contested, as would be its application, for plaintiffs raise as

---

[23]  Vázquez v. López-Rosario, 134 F.2d 28, 33-34 (1st Cir. 1998) (hearsay evidence may defeat summary judgment and statements repeated by a party-opponents cannot be held admissible); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) (hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment)(case citations omitted). Fed.R.Evid. 801(d)(2).  Even if the statement falls within hearsay exception, plaintiffs have failed to address agency, authority or right of the party to make such statement on behalf of Pagán-Centeno in his personal capacity.

[24]  Fed.R.Civ.P. 56(e) requires non-movants to submit evidence that would be admissible at trial to oppose properly supported motions for summary judgment. Finn v. Consolidated Rail Corporation, 782 F.2d 13, 16 (1st Cir. 1986); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil § 2727* (3d ed. 2013).

disputed that other floats without the claimed Christmas' theme were allowed to participate in the parade, as were other vehicles without following the imposed theme for that year, and defendants' averment as to a Christmas' theme was contrary to the traditional patron saint festivities conducted in the town of Lares and which did not require a permit nor to follow any theme.

Damages suits concerning constitutional violations need not proceed to trial for these could be determined on properly supported motion for summary judgment based on the defense of qualified immunity. Scheuer v. Rhodes, 416 U.S. 232, 250, 94 S.Ct. 1683, 1693 (1974). The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and liability for monetary damages under § 1983. *See* Roldán-Plumey v. Cerezo-Suárez, 115 F.3d 58, 65 (1st Cir.1997). These officers are immune when their conduct does not violate "clearly established statutory authority or constitutional rights." Mitchell v. Forsyth, 472 U.S. 511, 524, 105 S.Ct. 2806 (1985) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987). This examination, after having already determined that plaintiffs had established a constitutional violation, following with the right being clearly established and then if a reasonable officer in defendant's position would have believed not violating plaintiffs' rights, need not follow precisely the initial order if clearly one would defeat the other. Saucier v. Katz, 533 U.S. 194, 200-01, 121 S.Ct. 2151 (2001).

Given the facts raised by plaintiffs of circumstantial evidence as to the initial denial of their participation with the protest of their float on November 28, 2010 because of the content of their message, and thereafter the restrictions imposed to their participation in public spaces with their float as it was detained by municipal police upon higher orders, as well as pedestrian participation being hindered by municipal employees on account of the flag and message carried by plaintiff Pérez, their First Amendment violations were hindered. Thus, plaintiffs' allegations, if true, have established a constitutional violation as to the events of November 28, 2010.[25]

Secondly, it should be considered whether the right allegedly violated was clearly established at the time of the events. Dealing in the present case with an activity sponsored and organized by the Municipality with the participation of its Mayor as the head of the parade, through the public streets and sidewalks of the town of Lares, one can rest assured under uncontested factual issues that public, peaceful and organized public expressions may not be suppressed, hindered, prohibited or deterred unless defendants establish they are facing a higher government interest or some established neutral and content free regulation.[26]  *See* Jay M. Zitter, J.D., *Validity, construction, and application of state or local enactments regulating parades*, 80 ALR 5th 255 (200). Freedom of expression in

---

[25] It was previously discussed in the *prima facie* establishment of a First Amendment right that the speech at issue involved a matter of public concern as to individual plaintiffs, which when balanced against each the First Amendment interest of plaintiffs and the public outweighs the government's interest and the substantial or motivating factor in the adverse action resulted from plaintiffs' speech.

[26] A different assessment stems when protecting the First Amendment right of a group organized parade and their right not to alter the expression of their own parade when refusing to accommodate and thus exclude another group. Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557, 115 S.Ct. 2338 (1995).

Lareños en Defensa del Patrimonio Historico, Inc., et al. v. Municipality of Lares, et al.
Civil No. 11-1880 (FAB)
Report and Recommendation
Page 41

_____

public forums of the nature and circumstances raised herein have been long time established within constitutional framework, legislation and through court interpretations. As such, the right to express one opinions in public free from unreasonable government restraints is well established.

Finally, even if the abstract right invoked by plaintiffs is well and clearly established, so long as the concerned official could reasonably believe on those facts that no violation existed, he would still be entitled to qualified immunity. Thus, having determined above two-prongs in the affirmative, for qualified immunity to apply we need to examine if a reasonable officer could in the circumstances have reasonably believed that his actions did not violate plaintiffs' First Amendment rights.[27]

Mayor Pagán-Centeno claims he delegated authority to grant permits regarding public use, as well as to participate in activities, to other municipal employees. These other employees affirm under oath that Pagán-Centeno provided no instructions and had no participation as to the events that plaintiffs have complained were in violation of their First Amendment rights. Even if we accept as correct there was some First Amendment violation in denying plaintiffs the right to participate in the yearly parade, Pagán-Centeno, although being present and heading the parade, was not shown to have addressed any of the plaintiffs nor taken any action to interfere with their float nor with the pedestrian Pérez who was attempting to show her flag and message. Thus, all that the record and the evidence

_____

[27] Unlawfulness must be apparent at the time of the alleged violation in light of pre-existing law. Díaz-Bigio v. Santini, 652 F.3d 45 (1st Cir. 2011) (citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987); Dirrane v. Brookline Police Dept., 315 F.3d 65 (1st Cir. 2002).

produced by plaintiffs sustains is that Pagán-Centeno was present at the parade and was heading same.

In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982), the Supreme Court found no longer acceptable a subjective aspect of qualified immunity, even upon the caveat that questions of subjective intent are so rarely decided on summary judgment, for inquiries on subjective motivation are considered peculiarly disruptive of effective government. *Id.*, 457 at 817, 102 S.Ct. at 2737.[28]

Uncontested facts have shown after discovery that any relevant action that could be construed favorable for plaintiffs as in violation of their freedom of speech was not undertaken by Pagán-Centeno. His contention in support of qualified immunity is that he had no reason to consider that his limited action violated plaintiffs' rights. Succinctly said, his action dealt with having delegated any request for permit or authorization to participate in public activities to other municipal employees. After engaging in discovery and generating appropriate supporting materials for summary judgment, plaintiffs have presented no admissible evidence either that Pagán-Centeno's claim of lack of participation or any omission as to the events was but a charade by municipal employees to shield him from liability. Said action cannot yield any other result that an individual in Pagán-Centeno's shoes would have reasonably believed he was not violating a constitutional right of plaintiffs. Even after developing a full factual foundation as to the event of November

---

[28] Maiorana v. MacDonald, 596 F.2d 1072 (1st Cir. 1979) (in deciding whether to grant summary judgment in civil rights cases when qualified immunity is asserted, judicial reluctance to grant same in cases involving state of mind is counterbalanced by desirability of screening frivolous actions so as not to discourage officials from taking necessary and decisive action). *See also* Butz v. Economou, 438 U.S. 478, 496, 98 S.Ct. 2894, 2906-2911 (1978).

28, 2010, as well as the prior event on September 2010, plaintiffs still lack the requisite quantum of evidence to present before a jury that actions of those municipal employees alleged to have intervened with plaintiffs received any instruction or order from Pagán-Centeno.[29]

In view of the above, defendant Pagán-Centeno, in his personal capacity, is considered to be entitled to qualified immunity in the present case.  Accordingly, it is recommended that summary judgment on this ground should be GRANTED.

## C.    Supplemental Claims.

Plaintiffs filed pendent state claims under the state Constitution and Puerto Rico torts provision based on the events that transpired insofar as related to their First Amendment violation.  Defendants requested these state claims be summarily dismissed upon this Court disposing of all federal claims for it should decline to exercise jurisdiction over state claims. (Docket No. 88, p. 18).

When federal claims are dismissed before trial, state claims should be dismissed as well, but such is not a mandatory rule to be applied inflexibly in all cases.  Rather, the court should exercise informed discretion when deciding to assert supplemental jurisdiction over state law claims.  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614 (1988); Rosado v. Wyman, 397 U.S. 397, 403-05, 90 S.Ct. 1207 (1970); Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996).

---

[29]   Plaintiffs did not file any claim as to individual defendants whom they allege intervened with plaintiffs so there is no need to bring into questions their sporadic and unrelated acts as a link to co-defendant Pagán-Centeno's personal liability.

Since in accordance with above discussion at least one federal constitutional claim remains and survives summary adjudication, there are no grounds not to exercise jurisdiction as to pendent state claims.  Still more, at this advanced stage of proceedings at the eve of a pretrial conference and trial already scheduled,  there is no judicial economy, convenience or fairness that favors the court's from not exercising jurisdiction.  Redondo Const. Corp. v. Izquierdo, 662 F.3d 42 (1st Cir. 2011).

## CONCLUSION

In accordance with above discussed, and in relation to the summary judgment request  by defendants Municipality of Lares and Mayor Pagán-Centeno, in his official capacity (Docket No. 64), it is recommended that summary judgment be GRANTED IN PART and DENIED IN PART as follows:

- Summary judgment be DENIED as to plaintiffs' First Amendment claim being time barred.

- Summary judgment be GRANTED dismissing all federal and state claims by plaintiff corporation Lareños en Defensa del Patrimonio Histórico, Inc. for lack of standing.

- Summary judgment be GRANTED as to plaintiffs' First Amendment claim for the events of September 12, 2010.

- Summary judgment be DENIED as to plaintiffs' First Amendment claim for the events of November 28, 2010.

- Summary judgment be DENIED as to plaintiffs' supplemental claims.

<u>Lareños en Defensa del Patrimonio Historico, Inc., et al. v. Municipality of Lares, et al.</u>
Civil No. 11-1880 (FAB)
Report and Recommendation
Page 45

_____

As to defendant Mayor Pagán-Centeno, in his personal capacity, it is recommended that summary judgment be GRANTED for lack of evidence of individual participation and under qualified immunity.  (Docket No. 67).

IT IS SO RECOMMENDED.

**Since the Court has already scheduled a Pretrial Conference in this case for August 9, 2013 and Jury Trial is already set for August 26, 2013, the period of time to file any opposition to this Report and Recommendation needs to be reduced.  As such, the parties are granted until July 29, 2013 to file their simultaneous opposition, if any, unless they first seek and obtain an extension of time from the Presiding District Judge.**

San Juan, Puerto Rico, this 16th day of July of 2013.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE