**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| LAREÑOS EN DEFENSA DEL PATRIMONIO HISTORICO, INC., *et al.*,<br><br>    **Plaintiffs,**<br><br>        **v.**<br><br>MUNICIPALITY OF LARES, *et. al.*,<br><br>    **Defendants.** | **CIVIL NO.** 11-1880 (FAB) |

**MEMORANDUM AND ORDER**

Besosa, District Judge.

Before the Court are the reports and recommendations (R&R's) of United States Magistrate Judge Camille L. Velez-Rive, recommending that the Court:

1.    **DENY** summary judgment on plaintiffs' section 1983 claim on the ground of an expired statute of limitations;

2.    **GRANT** summary judgment of all federal and state law claims by plaintiff Lareños en Defensa del Patrimonio Historico, Inc. ("plaintiff corporation") for lack of standing;

3.    **GRANT** summary judgment as to plaintiffs' First Amendment claim for the events of September 12, 2010;

4.    **DENY** summary judgment as to plaintiffs' First Amendment claim for the events of November 28, 2010;

5.    **DENY** summary judgment as to plaintiffs' supplemental claims;

6.  **GRANT** summary judgment as to defendant Mayor Pagan-Centeno in his personal capacity for lack of evidence of individual participation and under the doctrine of qualified immunity; and

7.  **DENY** plaintiffs' motion for partial summary judgment. (Docket Nos. 100 and 102.)  For the reasons discussed below, the Court **ADOPTS IN PART and REJECTS IN PART** the magistrate judge's findings.

**I.  Background**

    **A.  Standard of Review**

A district court may refer a pending motion to a magistrate judge for a report and recommendation.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Loc. Rule 72(b).  Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report.  Loc. Rule 72(d).[1]  See 28 U.S.C. § 636(b)(1).  A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made."  Ramos-Echevarria v. Pichis, Inc., 698 F.Supp.2d 262, 264 (D.P.R. 2010); Sylva v. Culebra Dive Shop, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).  Failure to comply with this

---

[1] The magistrate judge reduced the period for objections due to the proximity of the trial date.  (Docket Nos. 100 and 102.)

rule precludes further review.  See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).  Borden v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987).  In conducting its review of the R&R, the court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (a)(b)(1); Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object.  See Hernandez-Mejias v. General Elec., 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (citing Lacedra v. Donald W. Wyatt Detention Facility, 334 F.Supp.2d 114, 125-126 (D.R.I. 2004)).  A party's failure to object to an R&R allows the Court to assume that the party agrees with the recommendations in the R&R.  Gonzalez-Santos v. Torres-Maldonado, 839 F. Supp. 2d 488, 500 (D.P.R. 2012).

   **B.   Undisputed Facts**

        In the R&R, the magistrate judge presents "Defendants' Uncontested Issues of Facts" and "Plaintiffs' Uncontested Issues of Facts" separately.  (See Docket No. 100.)  After reviewing plaintiffs' and defendants' submissions, the Court surmises that the magistrate judge structured the factual background in that way

because the parties haphazardly complied with Loc. R. 56.[2]  Local

Rule 56(b) strives "to create an organized and clear representation

of issues of fact which are truly contested between the parties,"

Total Petroleum P.R. Corp. v. Colon, 819 F. Supp. 2d 55, 60 (D.P.R.

2011) (Besosa, J.), and in this case the parties have not even come

close to providing the Court an easy-to-follow, comprehensible

account of the exact disputed and undisputed issues.  Although in

its objections to the R&R the plaintiffs set forth 19 additional

---

[2] Local Rule 56(b) requires a party moving for summary judgment to
submit factual assertions in "a separate, short, and concise
statement of material facts, set forth in numbered paragraphs,"
which must be in compliance with Local Rule 56(e).

    While the parties do submit factual assertions in separate
statements, their submissions are far from short, concise, and
clear.  In one reply, for example, the plaintiffs "submit their
Statement of Facts that have remained Uncontested and a Counter
Statement of the Facts that the Defendants Propose as Uncontested
but that are Contested."  (Docket No. 88 at 1.)  Moreover,
plaintiffs often conclude individual factual assertions with the
phrase, "This fact has not been contested by the [d]efendants,"
(see, e.g., Docket No. 88), yet the defendants often reply that
plaintiffs "mislead the Court [by] indicating erroneously that [the
defendants] did not contest these matters when in fact [they] did."
(see, e.g., Docket No. 99.)  The Court admonishes the parties to
take heed that the First Circuit Court of Appeals has "repeatedly
. . . emphasized the importance of local rules similar to Local
Rule 56 [of the District of Puerto Rico]."  Hernandez v. Phillip
Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007).

factual assertions that they still "believe[] to be undisputed,"[3] (Docket No. 108 at 2-5), the plaintiffs did not make specific objection to the magistrate judge's recitation of the undisputed factual background.   Accordingly, and after painstakingly navigating the numerous and unorganized submissions of contested and uncontested facts by the defendants, (Docket Nos. 65, 82, 99) and the plaintiffs, (Docket Nos. 71, 88), the Court hereby adopts the facts as stated in the R&R.

   C.   **Procedural History**

        On July 16, 2013 and July 18, 2013, the magistrate judge issued two R&R's (Docket Nos. 100 and 102, respectively) which allotted the parties until July 29, 2013 to file objections.   On July 29, 2013, the Court granted plaintiffs' motion for an extension of time, and on July 31, 2013 plaintiffs filed their

---

[3] The Court finds that plaintiffs' inclusion of these 19 facts, without supported citations to record material, fail to comply with Local Rule 56(e), which states in pertinent part:

> **An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion.   The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.**   The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

D.P.R. Civ. R. 56(e) (emphasis added).   Nonetheless, the Court notes that many of the facts are already contained in the magistrate judge's recitation of Plaintiffs' Uncontested Issues of Facts.   (Docket No. 100 at 12-14.)

Civil No. 11-1880 (FAB)                                                6

objections.  (Docket Nos. 107 & 108.)  Defendants did not submit
any objections and thus have waived the right to further review in
the district court.  Davet, 973 F.2d at 30-31.  The Court addresses
plaintiffs' objections below.

## II.  Plaintiffs' Objections

### A.  First Amendment Claim for the Events of September 12, 2010

Plaintiffs first object to the magistrate judge's
recommendation to grant defendants' motion for summary judgment as
to the First Amendment claim for the events of September 12, 2010.
The magistrate judge found that "no First Amendment violation to
[plaintiffs'] freedom of expression and/or association ensued"
because plaintiffs "were allowed a reasonable alternate public
space to conduct their activity on September 12, 2010." (Docket
No. 100 at 30.)  The Court finds that the proper legal standard
under the First Amendment does not support such a finding, and that
summary judgment is not warranted on that ground, and **REJECTS** the
magistrate judge's recommendation on this claim.

#### 1.  Standard

The Supreme Court of the United States has
recognized:

> The government does not have a free hand to
> regulate private speech on government property
> . . . . [M]embers of the public retain strong
> free speech rights when they venture into
> public streets and parks, which have
> immemorially been held in trust for the use of
> the public and, time out of mind, have been

> used for purposes of assembly, communicating
> thoughts between citizens, and discussing
> public questions. In order to preserve this
> freedom, government entities are strictly
> limited in their ability to regulate private
> speech in such "traditional public fora."
> Reasonable time, place, and manner
> restrictions[, however,] are allowed . . . ."

Pleasant Grove City v. Summum, 129 S. Ct. 1125, 1132 (2009). Thus, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. Int'l. Soc. for Krishna Consciousness, 452 U.S. 640, 647 (1981). A time, place, and manner restriction is one that "is justified without reference to the content of the regulated speech, . . . [is] narrowly tailored to serve a significant governmental interest, and . . . leave[s] open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); McCullen v. Coakley, 571 F.3d 167, 175 (1st Cir. 2009).

"Although a time, place, and manner restriction cannot be upheld without examination of alternative avenues of communication open to potential speakers, [the Supreme Court has] consistently rejected the suggestion that a government may justify a content-based prohibition by showing that speakers have alternative means of expression." Consol. Edison Co. v. Public Serv. Comm'n., 447 U.S. 530, 556 (1980). Contrary to what the magistrate judge concluded, therefore, the mere fact that the defendants directed the plaintiffs to another public site on

September 12, 2010 to carry out their protest — an alternative
avenue of communication — does not necessarily lead to the
conclusion that the plaintiffs' First Amendment rights were not
violated.  After all, "[a] major criterion for a valid time, place,
and manner restriction is that the restriction may not be based
upon either the content or subject matter of speech." Heffron v.
Int'l Soc. for Krishna Consciousness, 452 U.S. 640, 648 (1981).
The reviewing court must thus first analyze whether a legitimate,
content-neutral reason existed for imposing the time, place and
manner restriction.  See Sullivan v. City of Augusta, 511 F.3d 16,
33 (1st Cir. 2007).  So long as government regulation of expressive
activity is "*justified* without reference to the content of the
regulated speech," it is content-neutral.  Ward, 491 U.S. at 791
(citing Clark v. Community for Creative Non-Violence, 468 U.S. 288,
293 (1984) (emphasis added)).

> ## 2.  Analysis

        The Municipality of Lares must assert a legitimate,
content-neutral reason for its restriction on plaintiffs' use of
the Plaza de la Revolucion on September 12, 2010.  Finding that
material issues of genuine fact remain as to the legitimacy of the
Municipality's proposed reason, the Court **REJECTS** the magistrate
judge's recommendation that summary judgment be granted as to the
plaintiff's First Amendment claim for the September 12, 2010
events.

The record indicates that plaintiffs and defendant Pagan-Centeno have "background history" stemming from each other's positions as to the Municipality of Lares' historical name/motto. On September 23, 1868, an uprising took place in Lares. Tradition has it that it was a revolt against the Kingdom of Spain.[4] (Docket No. 99 at 5-6.) The uprising — ultimately suppressed by the Spanish military — has been known in Lares as the "Grito de Lares," and the township's motto has been "La Ciudad del Grito." Id. at 6. The namesake "La Ciudad del Grito" was not only adopted by the population of the township, but the Institute of Puerto Rican Culture has acknowledged and adopted that motto, and the Municipality adopted the motto as part of its coat of arms around the 1950s. Id. Defendant Pagan-Centeno has been the mayor of Lares since January 1, 2009, and at some point during his tenure as mayor adopted the slogan of "Las Cuidad de los Cielos Abiertos" as the Municipality's motto. Id. at 7-8.[5] The plaintiffs form part of the not-for-profit corporation Lareños en Defensa del Patrimonio

---

[4] At least one scholar has characterized the uprising as an act of resistance (for mainly economic reasons) against the abuse by the Spanish government on the island, and that it was later, in the 1930s, that the "Grito de Lares" was memorialized as a core event for the Puerto Rican nation. Pico, Fernando, A Cry for Modernity or a Defense of Tradition, El Nuevo Dia, September 17, 2000.

[5] Defendants claim, however, that the slogan "Ciudad de los Cielos Abiertos" is not the only motto that the mayor uses or promotes, and that it does not come to the exclusion of other mottos. (Docket No. 99 at 8) ("[T]he Mayor has not changed the motto but has been using an additional one . . . .").

Historico Inc., which was organized with the purpose of promoting the historical patrimony of the Municipality of Lares. (Docket No. 99 at 3.)  In September 2010, plaintiffs wanted to use the Lares town square, known as the Plaza de la Revolucion, to protest the use of the mayor's township namesake "Lares La Ciudad de los Cielos Abiertos" instead of the motto "Ciudad del Grito."  Id.

Both parties submit deposition and sworn testimony showing that the Municipality denied plaintiffs' request to make use of the Plaza de la Revolucion on September 12, 2010.  The parties agree that Plaza de la Revolucion is a property owned and managed by the Municipality that has "historically been used as a place of public expression of all sorts to express views and ideas by many people." (Docket No. 99 at 11-12.)  The proposed reason for the Municipality's denial of Revolution Plaza for the plaintiffs' protest was because an artisan's market would be present there until 6:00 p.m. that day. (See Docket No. 100 at 12; see also Docket Nos. 68-4 at 3-4; 71-1 at 3; 71-2 at 2; 71-3; 65-1 at 6-7, 15-17; 99 at 13-14.)  The only persons who ultimately used the Plaza de la Revolucion on September 12, 2010 were a group of artisans who regularly set up a tent measuring approximately 40 feet by 20 feet on the side of the square to sell crafts. (Docket No. 100 at 12.)  The Plaza de la Revolucion is larger than

the 20 x 40 foot area where the artisans set up,[6] and on other occasions the Municipality has allowed other activities at the square while artisans sold their art crafts.  Id.

Construing the entire record in the light most favorable to the plaintiffs and drawing all reasonable inferences their favor, as the Court must do at this stage, see Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 779-80 (1st Cir. 2011), the Court finds that material issues of fact preclude defendants' motion for summary judgment on plaintiffs' First Amendment claim for the events of September 12, 2010.  A reasonable inference may be drawn from the submitted evidence that the plaintiffs' request to use the Plaza de la Revolucion was denied precisely because of the content or subject matter of their desired protest and its relation with the plaza's historical significance; the plaintiffs' purpose in organizing the September 12, 2010 event was "to protest, express their views, and oppose the mayor's actions" regarding the "Cuidad del Grito" namesake — which arose from a historical uprising in the town — and they were denied permission despite other groups having been able to conduct their activities in the past in the plaza alongside the artisans.  On the other hand, a reasonable inference

---

[6]  The exact size of the plaza is contested.  Plaintiffs, introducing a small diagram, contend that the plaza measures approximately 10,800 square feet.  (Docket No. 71 at 7.) Defendants introduce deposition testimony by a government employee, however, that states that the plaza is 1,200 square meters (Docket No. 68-6 at 2), or about 3,900 square feet.

may also be drawn that the government denied access to the Plaza de la Revolucion for the legitimate state interest of crowd control; the plaza had been booked for the artisans' market each Sunday in September 2010, and plaintiffs' protest would have attracted approximately 1800 to 2000 attendees. The evidence here thus "tend[s] to support conflicting inferences" of whether the Municipality's asserted reason for denying plaintiffs the use of the plaza is legitimate and content-neutral, see Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 207 (1st Cir. 2006). Because the determination can go both ways, summary judgment is not warranted. See Montfort-Rodriguez v. Rey-Hernandez, 504 F.3d 221, 229 (1st Cir. 2007) ("Summary judgment cannot be predicated on so vacillatory a record.") (citation and internal quotations omitted). Moreover, the issue also ultimately involves credibility determinations of witnesses, which the court cannot make. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Accordingly, the Court **DENIES** defendants' request for summary judgment as to plaintiffs' First Amendment claim for the events of September 12, 2010, and **REJECTS** the magistrate judge's findings as to that claim.

**B.    First Amendment Claim for the Events of November 28, 2010**

Plaintiffs next object to the magistrate judge's recommendation to deny the plaintiff's motion for partial summary judgment for the events of November 28, 2010. The magistrate judge reasoned that genuine issues of material fact remained as to the events of November 28, 2010, and thus advised that summary judgment is inappropriate. (Docket No. 100 at 31.) Plaintiffs object that "there is no controversy over any material facts, and the motivation of the [d]efendants as far as the denial of the [p]laintiffs['] entry is impertinent and immaterial." (Docket No. 108 at 9.) Because the Court agrees that genuine issues of material fact do indeed exist, it finds that summary judgment is not warranted on plaintiff's First Amendment claim for the events of November 28, 2010.

The Free Speech Clause of the First Amendment restricts government regulation of private speech, Pleasant Grove City v. Summum, 555 U.S. 460, 467 (2009), and "reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." Boos v. Barry, 485 U.S. 312, 318 (1988) (citations omitted). As the Supreme Court has elaborated:

> This Court long ago recognized that members of the public retain strong free speech rights when they venture into public streets and parks, which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of

> assembly, communicating thoughts between
> citizens, and discussing public questions. In
> order to preserve this freedom, government
> entities are strictly limited in their ability
> to regulate private speech in such traditional
> public fora.  Reasonable time, place, and
> manner restrictions are allowed, but any
> restriction based on the content of the speech
> must satisfy strict scrutiny, that is, the
> restriction must be narrowly tailored to serve
> a compelling government interest, and
> restrictions based on viewpoint are
> prohibited.

Summum, 555 U.S. at 469 (internal quotations and citations omitted).  Public squares are traditionally places of First Amendment-protected expression, and only time, place and manner restrictions are constitutionally permitted.  See, e.g., Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984).  As a form of expression, participation in parades receives similar First Amendment protection.  See, e.g., Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557, 568 (1995) (stating that parades have an "inherent expressiveness of marching to make a point").

It is undisputed between the parties that traditionally, a celebration takes place each year in Lares to commemorate the patron saint of the town; that the celebration takes place with social, cultural, and religious activities; that the Municipality has sponsored, produced, and directed such activities for several years; that one of the activities that has taken place under the sponsorship and direction of the Municipality as part of the yearly

patron saint activities has been a parade of carriages or floats;
that as part of the parade of carriages, floats are prepared by
residents of Lares and by people from other townships to form part
of the parade; that people participate on foot and other persons
participate in their own cars or in buses or in other types of
motor vehicles; and that as part of the activities the year
2010, the parade took place on November 28, 2010.  (Docket No. 99
at 16-19.)  Beyond those facts, the parties do not agree on a host
of material facts that directly pertain to whether the Municipality
violated plaintiffs' rights to free speech.

        The fundamental issues of whether and to what extent the
defendants curbed the plaintiffs' speech, for example, remain
disputed.  Plaintiffs claim that the municipal initially denied
them the right to participate in the parade; that nonetheless they
prepared a float and attempted to enter the parade through an
intersection on the parade route; and that Municipal police
officers barred the entrance of the float into the parade.  (Docket
No. 88 at 12.)  Defendants deny that plaintiffs desired to
participate in the parade with a carriage to express their support
to the namesake of the township of Lares as "La Ciudad del Grito";
they contest whether "plaintiffs were told that once those who were
part of the parade with Christmas motif were finished, they were
free to go ahead with their float"; and they dispute "any claim of
having intervened with plaintiffs' float."  (Docket Nos. 99

at 19-23; 102 at 14-15.)  Given the opposing opinions as to whether
any government infringement ever occurred against plaintiffs
regarding the November 28, 2010 parade, it is unquestionable that
the parties also dispute any reason underlying the alleged denial
of permission to participate in the parade.  Furthermore, the
parties dispute whether set guidelines existed under which the
Municipality issued or denied the plaintiffs permission to
participate in the parade.  While the plaintiffs argue that the
Municipality had no regulations in effect to determine who, when,
and how persons or groups could participate in the parade,[7] the
defendants claim that the "[p]laintiffs did not request permission"
to participate in the parade, and that rules, regulations, and a
Municipality Office dedicated to conducting the activities of the
town — including issuing policies regarding the parade — indeed
existed.  (See Docket No. 99 at 17-18.)

       "Summary judgment cannot be predicated on so vacillatory
a record."  Montfort-Rodriguez v. Rey-Hernandez, 504 F.3d 221, 229
(1st Cir. 2007) (citation and internal quotations omitted).
Moreover, these factual issues are pertinent to the determination
of whether a government restriction upon plaintiffs' speech
occurred, and if so, what type of legal standard is invoked to
classify the restriction's constitutionality.  At this stage, the

---

[7] Plaintiffs also claim that defendants failed to produce such
regulations in response to their discovery requests.  (Docket
No. 88 at 9.)

Court cannot determine as a matter of law whether the defendants infringed upon the plaintiffs' free speech rights because foundational issues of fact remain. Accordingly, the Court **ADOPTS** the magistrate judge's recommendation on this claim, and plaintiffs' motion for summary judgment as to their First Amendment claim for the events of November 28, 2010 is **DENIED**.

**C.   Dismissal of Defendant Mayor Pagan-Centeno, in his personal capacity**

The plaintiffs' final objection focuses on the magistrate judge's recommendation to dismiss claims against defendant Mayor Pagan-Centeno in his personal capacity.   The magistrate judge reasoned that plaintiff Guzman-Gonzalez's testimony that he heard from Ms. Marilia Arce-Gonzalez, a Municipal employee, that "Mayor Roberto Pagan-Centeno had told her not to allow our participation because we wanted to create controversy," (Docket No. 100 at 36), was "unreliable for being double hearsay and may not defeat summary judgment on grounds that it shows pretext or intent."   Id. at 37. Acknowledging that their evidence against defendant Pagan-Centeno in his personal capacity is based on statements the mayor allegedly made to municipal employees, who then allegedly spoke to plaintiff Guzman-Gonzalez, the plaintiffs dispute that the evidence is inadmissible.   (Docket No. 108 at 10-12.)   They claim that their evidence contradicts the sworn but self-serving statements of Mayor Pagan-Centeno, and thus a genuine issue of material fact exists as

to why the plaintiffs were barred from the November 28, 2010
parade. <u>Id.</u> at 10-11.

        The First Circuit Court of Appeals has ruled that
"inadmissible evidence may not be considered" at the summary
judgment stage. <u>Horta v. Sullivan,</u> 4 F.3d 2, 8 (1st Cir. 1993)
(citation omitted). The question facing the Court, therefore, is
whether statements by Ms. Arce and other municipal employees to
plaintiff Guzman-Gonzalez regarding statements made by Mayor Pagan-
Centeno are admissible evidence against defendant Pagan-Centeno in
his personal capacity. Pursuant to the Federal Rules of Evidence,
plaintiff Guzman-Gonzalez' testimony that Mayor Pagan-Centeno told
Ms. Arce not to permit the plaintiffs to participate in the parade
because they "wanted to create controversy" constitutes
inadmissible hearsay within hearsay. <u>See</u> Fed. R. Evid. 805. Mayor
Pagan-Centeno's alleged statement qualifies as a nonhearsay
admission of a party opponent. <u>See</u> Fed. R. Evid. 801(d)(2). For
that statement to be admissible, however, Ms. Arce's statement — or
any other statement by Municipality officials regarding Mayor
Pagan-Centeno's statements — to plaintiff Guzman-Gonzalez must also
meet an exception to the rule against hearsay. <u>See</u> Fed. R. Evid.
805. Plaintiffs offer no such exception, and the Court declines to
hold that one is met. <u>See</u> <u>U.S. v. Zannino</u>, 895 F.2d 1, 17 (1st
Cir. 1990) ("Judges are not expected to be mind-readers.
Consequently, a litigant has an obligation to spell out its

arguments squarely and distinctly, or else forever hold its peace."). Plaintiffs do argue that statements by the municipal employees "constitute an admission by employees of the Municipality under the direction of the Ma[y]or," and pursuant to Fed. R. Evid. 801(d)(2), the Court agrees that such a statement is admissible against the Municipality. As against the mayor in his personal capacity, however, the statement cannot qualify as an opposing party hearsay exclusion. Accordingly, the Court agrees with the magistrate judge that the circumstantial evidence or inference of intentions attributed to Mayor Pagan-Centeno "is tenuous at the most." (Docket No. 100 at 37.) Because "[m]ere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact," August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992), summary judgment is appropriate as to the claims against defendant Pagan-Centeno in his personal capacity. Furthermore, the Court also **ADOPTS** the magistrate judge's qualified immunity analysis — which was not objected to by the parties — and holds that summary judgment is warranted as to plaintiffs' claims against Mayor Pagan-Centeno in his personal capacity because he is entitled to qualified immunity. Accordingly, the Court **DISMISSES** all claims against defendant Pagan-Centeno in his personal capacity.

Civil No. 11-1880 (FAB)                                                    20

**III. CONCLUSION**

For the reasons discussed above, the Court **ADOPTS IN PART and REJECTS IN PART** the magistrate judge's findings contained in the R&R at docket number 100, and **ADOPTS** the magistrate judge's findings contained in the R&R at docket number 102. Accordingly, the Court (1) **DENIES** summary judgment on plaintiffs' section 1983 claim on the ground of an expired statute of limitations; (2) **GRANTS** summary judgment of all federal and state law claims by plaintiff Lareños en Defensa del Patrimonio Historico, Inc. for lack of standing; (3) and (4) **DENIES** summary judgment as to plaintiffs' First Amendment claims for the events of September 12, 2010 and November 28, 2010; (5) **DENIES** summary judgment as to plaintiffs' supplemental claims; (6) **GRANTS** summary judgment as to plaintiffs' claims against defendant Pagan-Centeno in his personal capacity; and (7) **DENIES** plaintiffs' motion for partial summary judgment.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 2, 2013.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE